**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

RECEIPT # 5571/2
AMOUNT $ 150
SUMMONS ISSUED Y-Y
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. 27
DATE 5-6-0 Y

|  |  |
|---|---|
| RALPH E. GRABOWSKI, | ) |
| Plaintiff, | ) Civil Action No.: |
| v. | ) |
| QUALCORE LOGIC (ANALOG), INC.; QUALCORE GROUP, INC.; and TERABURST NETWORKS, INC., | ) **COMPLAINT AND JURY DEMAND** |
| Defendants. | ) |

04 cv

MAGISTRATE JUDGE _Collings_

Plaintiff Ralph E. Grabowski, for his Complaint against Defendants QualCore Logic (Analog), Inc., QualCore Group, Inc., and TeraBurst Networks, Inc., alleges upon personal knowledge with respect to himself and his own actions, and upon information and belief with respect to all other matters, as follows:

## THE PARTIES

1.      Plaintiff Ralph E. Grabowski ("Grabowski") is an individual residing at 57 Sunset Rock Road, Andover, Massachusetts.

2.      Defendant QualCore Logic (Analog), Inc. ("QualCore Analog") is a privately-held Delaware corporation with its principal place of business at 84 W. Santa Clara, San Jose, California. QualCore Analog was formerly known as LEDA Systems, Inc. ("LEDA Systems") prior to its acquisition by merger effective in or around September of 2003. Upon information and belief, QualCore Analog is a successor-in-interest to all relevant liabilities of LEDA Systems, including amounts owed to third parties such as Grabowski.

3.      Defendant QualCore Group, Inc. ("QGI") is a privately-held Delaware corporation with its principal place of business at 888 E. Arques Avenue, Sunnyvale, California. QGI acquired QualCore Analog as a wholly-owned subsidiary by merger effective in or around September of 2003.

4.      Defendant TeraBurst Networks, Inc. ("TeraBurst") is a privately-held Delaware corporation with its principal place of business at 1289 Anvilwood Avenue, Sunnyvale, California. TeraBurst wholly-owns QGI. Upon information and belief, in connection with QGI's acquisition by merger of QualCore Analog in or around September of 2003, all outstanding shares of LEDA Systems, Inc. capital stock were converted into shares of TeraBurst common stock.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over the present action pursuant to 28 U.S.C. § 1332(a). Complete diversity exists between Grabowski and Defendants, and the subject matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.      This Court has personal jurisdiction over Defendants consistent with the requirements of Massachusetts General Laws Chapter 223A, § 3 and the Due Process Clause of the United States Constitution. Defendants have transacted business, contracted to supply services or things, designated local agents for service of process, and/or caused tortious injury by acts or omissions in Massachusetts. Moreover, Defendants have caused tortious injury by acts or omissions occurring outside of Massachusetts while regularly doing or soliciting business, engaging in a persistent course of conduct, and/or deriving substantial revenues from goods used or consumed or services rendered in Massachusetts. As set forth more fully below, the present action principally involves alleged breaches of a Consulting Agreement under which contractual

performance was contemplated and provided in Massachusetts, and which contains

Massachusetts forum-selection and choice-of-law provisions.

7.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a). A substantial

part of the events or omissions giving rise to Grabowski's claims occurred in this District given

that the present action principally involves alleged breaches of a Consulting Agreement under

which contractual performance was contemplated and provided in this District, and which

contains Massachusetts forum-selection and choice-of-law provisions.

## FACTUAL BACKGROUND

8.    Grabowski is a professional Marketing Consultant and a VP of Marketing for

start-up companies who holds a BS in electrical engineering from the Massachusetts Institute of

Technology ("MIT"). A prolific author and teacher on the subject of the front-end marketing

process for launching emerging technologies, Grabowski is a co-founder of MIT's

entrepreneurship program, a co-founder of the Sloan School of Management's graduate course

entitled "Starting And Running A High Tech Company," and a co-founder of the world's first

IEEE Robotics Chapter. Grabowski has served as an Adjunct Professor in the Executive MBA

Program at Suffolk University's Sawyer School of Management, and as a Guest Lecturer in

Boston University's MBA Program with a concentration in innovation and technology.

9.    For more than twenty years, Grabowski's specialty as a professional Marketing

Consultant and VP of Marketing for start-up companies has been to provide *upstream* marketing

services to technology-based enterprises. These services typically have included complex fact

gathering and analytical processes relating to market segmentation, market sizing, market

validation, competitive intelligence, food chain analysis, modeling the customer, calculating

customer pay back, and quantifying customer needs. As such, Grabowski's services are different

3

in both substance and timing from later *downstream* promoting and selling activities. Over the course of his career, Grabowski has helped to launch new products, new companies, and new fields of technology that became worth in excess of ten billion dollars.

10.     Grabowski has historically been retained by start-up technology companies under temporary consulting contracts to serve as their initial Vice President of Marketing. In addition to requiring all of the standard services described above, these companies have tasked Grabowski with drafting the marketing and executive summary sections of their business plans to help attract capital and to validate the business opportunities necessary to compel investment. Moreover, Grabowski has worked closely with their engineering departments to coordinate technology and product development efforts with customer demand in the marketplace. Grabowski has also been instrumental in developing the financial and strategic goals for these companies, creating their marketing budgets and staffing plans, and hiring and supervising their initial marketing personnel.

11.     In early 1997, LEDA Systems was a start-up technology company targeting certain segments of the Electronic Design Automation ("EDA") marketplace by designing proprietary products and methods that integrated mixed-signal library development with deep-submicron semiconductor process development. LEDA Systems was hoping to win business from semiconductor foundry and integrated circuit designer customers by offering them significant time-to-production benefits. However, LEDA Systems was unable to sufficiently identify or capitalize on these opportunities because it had not retained any marketing management personnel. To address this problem, LEDA Systems turned to Grabowski, who could provide both the marketing *and technical* expertise that the company required. Indeed, in 1970, Grabowski had helped to launch the EDA field in which LEDA Systems participated, as

4

well as the related field of Computer-Aided Design ("CAD").  Moreover, Grabowski had

relevant experience spanning more than 25 years in IC design, semiconductor fabrication,

semiconductor lithography, and semiconductor equipment.


**Grabowski's Consulting Agreement With LEDA Systems**

12.     In or around January of 1997, LEDA Systems approached and recruited

Grabowski to serve as a professional Marketing Consultant to the company.  Grabowski began

working for LEDA Systems by month's end, and ultimately negotiated a written consulting

agreement dated February 12, 1997 with LEDA Systems' President, Gregory Peterson

("Peterson"), under which Grabowski agreed to "provide marketing assistance as ... [a] VP of

Marketing on a temporary executive basis" (the "Consulting Agreement").  A true and correct

copy of the Consulting Agreement, as executed by Grabowski and Peterson, is attached hereto as

Exhibit A.

13.     The Consulting Agreement clearly provided that LEDA Systems was retaining

Grabowski for an initial "forty man-day assignment," and that the standard fee for Grabowski's

services was "$2,500 per day, plus expenses."  However, the parties agreed that Grabowski

would charge a reduced fee of $1,500 per day plus expenses on the express condition that LEDA

Systems pay him a specified combination of: (i) advance cash payments; (ii) deferred cash

payments; and (iii) stock options.

14.     In particular, the Consulting Agreement required LEDA Systems to compensate

Grabowski for the first twenty man-day period of the assignment as follows:

5

(i)    Advance Cash Payments.  LEDA Systems was required to pay Grabowski "$750 per man-day, payable as an advance deposit of $7,500 for the first ten days of work, and from then on as $7,500 before the second increment of ten man-days;"

(ii)    Deferred Cash Payments.  LEDA Systems was required to pay Grabowski "$750 per man-day, payable as [up to] 20% of any Leda Systems' revenue, debt, or equity; due within five (5) business days upon Leda Systems' receipt of any such funds;" and

(iii)    Stock Options Payments.  LEDA Systems was required to grant options to Grabowski to purchase "20,590 shares of January 27, 1997, Leda Systems common stock, at 85% of the current price of $2 per share."  This was the equivalent of granting Grabowski options to purchase 1,029.5 shares of stock per man-day worked.  The stock options were to be "immediately vested in full," and were to be exercisable by Grabowski at any time of his "choosing [for] up to ten (10) years."

15.    With respect to the second twenty man-day period of the assignment, the Consulting Agreement gave LEDA Systems the choice of either continuing to compensate Grabowski on exactly the same terms set forth above, or of modifying their Agreement by converting it to a completely *non-deferred* cash payment structure.  LEDA Systems ultimately elected to continue compensating Grabowski in the manner it previously had been during the first twenty man-day period.

16.    The Consulting Agreement contained Massachusetts forum-selection and choice-of-law provisions which clearly stated that the "laws and the courts of the State of Massachusetts shall apply."  As described more fully below, Grabowski's performance under the Consulting Agreement occurred principally in Massachusetts.

6

17.     In reliance on the promises made by LEDA Systems in connection with the Consulting Agreement, Grabowski provided substantial marketing consulting services, including acting as LEDA Systems' initial VP of Marketing.  Among other things, Grabowski performed fact gathering, analytical marketing, and competitive intelligence which lead to the development of a new business model for LEDA Systems and a draft of the marketing section of its business plan.  Moreover, Grabowski undertook significant efforts to help LEDA Systems prepare for an upcoming meeting in Dallas, Texas with representatives from Chartered Semiconductor Manufacturing, which was one of the world's largest foundries and a prized potential customer for LEDA Systems.

18.     On April 2, 1997, LEDA Systems made a written offer to Grabowski to extend their Consulting Agreement for another forty man-days under its original terms which Grabowski accepted.


**Modifications To The Consulting Agreement**

19.     On April 8, 2003, Peterson informed Grabowski that although LEDA Systems had some cash on hand, they wanted to spend it elsewhere and were therefore unable to meet their advance cash payment obligations under the Consulting Agreement relating to the second twenty man-day period and subsequent periods.  Nevertheless, Peterson indicated that LEDA Systems was strongly interested in retaining Grabowski's services.  Peterson offered to re-negotiate the Consulting Agreement on terms more favorable to Grabowski if Grabowski would agree to work for LEDA Systems going forward on a *completely deferred* compensation basis.

20.     The parties undertook re-negotiations which culminated in certain limited modifications being made to their existing Consulting Agreement.  For his part, Grabowski

agreed to take on substantial additional economic risk with respect to a struggling company that had entirely uncertain financial prospects. Indeed, Grabowski agreed that for all time periods subsequent to those for which he had already been paid, the advance cash payment obligations of his compensation would be converted to deferred cash payment obligations under the relevant terms of the Consulting Agreement. In other words, Grabowski pledged to continue performing precisely the same duties as before, but on a "double deferred" cash compensation basis pursuant to which he would receive *no* advance (or otherwise guaranteed) payments for his services.

21.    In exchange for Grabowski agreeing to take on this additional financial risk, LEDA Systems agreed to improve his compensation package in the following two respects:

(i)    LEDA Systems agreed to increase the rate at which Grabowski was to be granted stock options. Specifically, for all time periods subsequent to the first twenty man-day period of the initial assignment, Grabowski was to be compensated with options to purchase 1,470.6 shares of stock per man-day worked; and

(ii)    LEDA Systems agreed to pay Grabowski a royalty percentage in perpetuity of any and all funds that it was to receive in the future, whether in the form of revenues or of proceeds from any debt or equity offerings. Specifically, Grabowski was to be paid 10% of the first $2 million that LEDA Systems received; plus 5% of the next $2 million; plus 4% of the next $2 million; plus 3% of the next $2 million; plus 2% of any amount over $8 million.

22.    The parties' agreed-to modifications were memorialized in a written addendum dated April 8, 1997 that was added as the fourth page to their Consulting Agreement. See Exhibit A attached hereto. Executed by both Grabowski and Peterson, the addendum set forth

8

Grabowski's royalty percentage fee schedule detailed above, and made clear that its terms were being "added to ... [the earlier Consulting Agreement] contract of February 12, 1997."

23.     In reliance on the promises made by LEDA Systems in connection with the Consulting Agreement as modified on April 8, 1997, Grabowski continued performing his same marketing consulting services, including his duties as VP of Marketing.

24.     On June 16, 1997, Grabowski sent an e-mail to Peterson summarizing certain net amounts that he was owed by LEDA Systems up through June 13, 1997 for having completed his first seventy-five man-days of service. Grabowski stated therein that he was owed $84,850 in deferred cash compensation exclusive of expenses. Moreover, Grabowski further stated that he was owed options to purchase 101,473 shares of LEDA Systems common stock. Grabowski requested that Peterson "[p]lease send a confirming e-mail that we are in agreement."

25.     On June 25, 1997, Peterson sent Grabowski the requested e-mail response confirming that Grabowski's earlier e-mail dated June 16, 1997 had accurately set forth the amounts that LEDA Systems owed him. Peterson acknowledged that the substance of Grabowski's earlier e-mail "looks correct per my understanding."

26.     On or about July 16, 1997, Grabowski received a copy of a letter addressed to Peterson from LEDA System's corporate attorneys, Graham & James LLP ("Graham & James"). This letter acknowledged that LEDA Systems had reached a "number of oral understandings with its founders, consultants and investors" pursuant to which these parties had "claims to equity ownership in" the company. Attached to the letter was a capitalization table prepared by Graham & James "[b]ased on the information supplied by LEDA [Systems]." The capitalization table showed that Grabowski was owed options to purchase 101,473 shares of common stock,

9

while the text of the letter stated that LEDA Systems was planning to "recapitalize by issuing all such common shares at a price of $0.01 per share."

## LEDA Systems Denies Breaching The Consulting Agreement

27.    On or about July 24, 1997, Grabowski received a letter from Peterson stating that a "confusion" had arisen as to Grabowski's proper "role and function" in relation to the brokerage firm (Arcadia Ventures) and the law firm (Graham & James) that LEDA Systems had hired to assist it with fund raising. Given this purported "confusion," Peterson instructed Grabowski to "consider this official notification that I am instructing you to halt any and all activities with respect to LEDA Systems ... until such time as we are convinced that all issues have been resolved."

28.    Concerned that LEDA Systems was attempting to abrogate the Consulting Agreement, and suspicious that the company was in breach thereunder, Grabowski contacted his attorney, Gene K. Landy, Esq. ("Attorney Landy"). On August 21, 1997, Attorney Landy sent a letter to Peterson expressing the good faith belief that: "[b]ecause LEDA has already received revenues from sales of products and services, deferred compensation is currently due and payable [under the Consulting Agreement] to the extent of 20 percent of such receipts. LEDA's failure to make the payment when due is a willful breach of the Agreement."

29.    Attorney Landy's letter also summarized certain net amounts that Grabowski was owed by LEDA Systems up through July 23, 1997 for having completed 100.9 man-days of service. Attorney Landy stated therein that Grabowski was owed $123,700 in deferred cash compensation exclusive of expenses. Moreover, Attorney Landy further stated that Grabowski was owed options to purchase 139,562 shares of LEDA Systems common stock.

10

30.    On September 8, 1997, Peterson responded on behalf of LEDA Systems to Attorney Landy's earlier letter dated August 21, 1997. Peterson asserted that LEDA Systems was *not* attempting to terminate the Consulting Agreement, and he noted that Grabowski's services thereunder were to be provided on an "as required basis." Moreover, Peterson denied that LEDA Systems had breached any of its deferred cash payment obligations to Grabowski. As Peterson explained, these payments were not yet due and owing because LEDA Systems had not yet "received revenues from sales of products and services ... [up] through the date of . . . [Attorney Landy's] letter."

31.    Peterson's letter of September 8, 1997 also acknowledged the net amounts that LEDA Systems owed Grabowski as had been previously detailed by Attorney Landy. For example, Peterson confirmed that Grabowski was owed $116,490 in deferred cash compensation exclusive of expenses. This corresponded to Attorney Landy's $123,700 figure, minus $6,210 that LEDA Systems had recently paid to Grabowski from revenues received on August 26, 1997. Moreover, Peterson expressly confirmed that Grabowski was "entitle[d] to" options to purchase 139,562 shares of LEDA Systems common stock, which were "exercisable up to 10 years after completion of" the Consulting Agreement.

32.    Following this exchange of letters between Attorney Landy and Peterson, LEDA Systems promised to continue adhering to the terms of the Consulting Agreement, including the April 8, 1997 modifications thereto, by making deferred cash payments to Grabowski of up to 20% of any new funds it might receive. Apparently in keeping with this promise, LEDA Systems made deferred cash payments to Grabowski that included a payment of $8,820 on November 25, 1997, and another in the amount of $3,500 on March 10, 1998.

## LEDA Systems' Repudiation Of The Consulting Agreement

33.    On June 10, 1998, Peterson abruptly sent Grabowski a letter attaching a document entitled "Termination, Release And Settlement Agreement" (the "Proposed Release"). The Proposed Release acknowledged that the parties had previously entered into a Consulting Agreement dated February 12, 1997 that had thereafter been "amended and modified by the parties in writing, orally, or through their conduct." According to the recitation clauses of the Proposed Release, its purpose was to "terminate all [such] agreements and arrangements" between the parties, and to "settle all outstanding issues between the parties" relating to their past agreements and arrangements.

34.    The express terms of the Proposed Release made clear that LEDA Systems was repudiating its obligations to Grabowski under the Consulting Agreement. Indeed, pursuant to the Proposed Release, LEDA Systems would agree to pay Grabowski the $98,300 in deferred cash compensation that it admittedly owed him only on the *conditions* that Grabowski "release LEDA from all [other] past and future obligations," and acknowledge that this was the "total compensation due" to him. In other words, LEDA Systems was requiring that Grabowski give up his valuable contractual rights to stock options and future royalty payments as the price for receiving the deferred cash compensation that he had already *unconditionally* earned under the Consulting Agreement.

35.    LEDA Systems' further communications with Grabowski confirmed that it was repudiating its obligations under the Consulting Agreement. Despite having apparently received sufficient funds to advance a $98,300 payment, Peterson's letter of June 10, 1998 informed Grabowski that an executed copy of the Proposed Release "needs to be returned to Mr. [Chuck] Stern" before LEDA Systems would be willing to make such a payment. In an e-mail to

12

Grabowski dated June 23, 1998, Peterson reiterated that Chuck Stern was "authorized to release

the funds to you [only] upon his receipt of one of the signed copies of release letter given to

you." Similarly, in a letter to Attorney Landy also dated June 23, 1998, LEDA Systems' Vice

President of Sales, Chuck Stern, stated that "a signed release is necessary prior to any funds

being released from our company."

36.     On or about June 26, 1998, Attorney Landy sent a letter to LEDA Systems on

Grabowski's behalf rejecting the Proposed Release document. Attorney Landy emphasized that

LEDA Systems "unconditionally owes Mr. Grabowski the sum of . . . [$98,380] as deferred

compensation under the 1997 [Consulting] Agreement." Accordingly, Attorney Landy cautioned

that it would be a violation of Mass. G. L. c. 93A for LEDA Systems to "intentionally

withhold[ ] mon[ies] it knows are due in an attempt to force . . . [Grabowski] to give up the rest

of his contractual rights."

37.     Attorney Landy sent an additional letter to LEDA Systems on June 30, 1998 that

demanded the following on Grabowski's behalf:

(i)     Royalty Percentage Payments. Grabowski requested that LEDA Systems

make any royalty percentage payments due and owing to him consistent with the

requirements of the April 8, 1997 addendum to the Consulting Agreement;

(ii)     Request For Information. Grabowski requested that LEDA Systems

provide him with a reasonably detailed accounting of its "receipts from revenue, debt,

and equity since February, 1997" so that any royalty percentage payments he was owed

could be calculated and verified. Moreover, Grabowski requested "information about the

capital structure of LEDA, including the details regarding all issued shares, warrants and

options or other securities, the amount and type of debt, and the pricing and amounts of

all securities transactions, as well as the identity of the purchasers or holders in each such transaction;" and

(iii)    Exercise Of Stock Options.  Grabowski formally attempted to exercise his "options to purchase one thousand (1000) shares of January 27, 1997 LEDA Systems common stock," and he requested that LEDA Systems send him the corresponding stock certificates.  Grabowski also asked for written confirmation that he "will enjoy all rights and privileges of a LEDA Systems shareholder and will receive all information that is provided to LEDA shareholders as it becomes available."

38.    On or about July 16, 1998, Attorney Landy received a voicemail message from the Boston law firm of Foley, Hoag & Elliot ("Foley Hoag") stating that they had been retained by LEDA Systems, and that they would be contacting him soon to address the issues raised in his June, 1998 letters.  However, Attorney Landy never heard from Foley Hoag again, and to date Grabowski has never received any response from LEDA Systems or its representatives to Attorney Landy's June, 1998 letters.  Since at least June 10, 1998, in ongoing and continuing bad faith breaches of the Consulting Agreement, LEDA Systems has made no further payments to Grabowski of any amounts owed to him, and LEDA Systems has failed to provide Grabowski with any of the information or stock certificates he has requested.  Given LEDA System's clear repudiation of the Consulting Agreement and its failure to honor Grabowski's written request to exercise his first tranche of 1000 stock options, it clearly was futile for Grabowski to attempt to exercise the remainder of his stock options.

39.    On or about November 1, 1998, Grabowski returned an unsolicited telephone call from LEDA Systems' Founder, Chairman, and Chief Technical Officer, Vahram Mouradian ("Mouradian").  Mouradian told Grabowski that he had personally assumed responsibility for

14

"paying you," and that LEDA Systems was "going to pay you what we owe you." After

listening to Grabowski's explanation of what he was owed, Mouradian promised to "go back to

the office and see what he can do." Thereafter, Grabowski never heard from Mouradian again.

## QGI's Acquisition By Merger Of LEDA Systems

40.    In early 2004, Grabowski first saw press accounts announcing the fact that LEDA

Systems had been acquired by merger effective in or around September of 2003. Pursuant to the

merger, LEDA Systems became a wholly-owned subsidiary of QGI, and changed its corporate

name to QualCore Analog. The parent company of QGI, TeraBurst, also was involved in the

merger transaction. Upon information and belief, all outstanding shares of LEDA Systems

capital stock were converted into shares of TeraBurst common stock at the time the merger

became effective.

41.    Given Grabowski's ownership of vested LEDA Systems stock options and his

timely efforts to exercise the same, Grabowski was contractually and legally entitled to all of the

rights and privileges of a LEDA Systems shareholder and/or optionee, including all shareholder

and/or optionee rights arising from, or in connection with, the Merger Agreement reached

between LEDA Systems, QGI, and TeraBurst.

42.    Grabowski was never notified or informed of the merger, was never afforded the

opportunity to exercise his rights as a LEDA Systems shareholder and/or optionee with respect to

the merger or otherwise, and was never provided anything of value for his LEDA Systems stock

and/or options in connection with the merger, whether in the form of TeraBurst common stock or

otherwise.

15

43.     Accordingly, when Grabowski first saw press accounts about the merger in 2004, he realized based upon information and belief that LEDA Systems, QGI, and/or TeraBurst had breached his rights and privileges arising under the Consulting Agreement, the Merger Agreement, other related agreements, and/or applicable law by committing at least some of the following wrongful acts:

(i)     failing to grant or issue his LEDA Systems stock options in the first instance as required under the Consulting Agreement;

(ii)     unlawfully canceling, terminating, or extinguishing his LEDA Systems stock options to the extent that they ever had been granted or issued;

(iii)     failing to honor his written request to exercise his LEDA Systems stock options;

(iv)     unlawfully retaining and converting his shares of LEDA Systems common stock to the extent that his request to exercise stock options ever had been honored;

(v)     failing to timely notify or inform him about the merger prior to its effective date or otherwise;

(vi)     failing to notify or inform him about, or allow him the opportunity to exercise, his rights as a LEDA Systems shareholder and/or optionee in connection with the merger;

(vii)     failing to seek or obtain any consents or approval required from him as a LEDA Systems shareholder and/or optionee in connection with the merger;

(viii)     failing to afford him voting, dissenting, and/or appraisal rights as a LEDA Systems shareholder and/or optionee in connection with the merger;

(ix)     failing to afford him the opportunity to surrender and convert his LEDA Systems stock and/or options into something of value in connection with the merger, whether in the form of TeraBurst common stock or otherwise; and/or

(x)     failing to *automatically* convert his LEDA Systems stock and/or options into something of value in connection with the merger, whether in the form of TeraBurst common stock or otherwise.

## STATEMENT OF CLAIMS

### COUNT I

### Breach Of Contract

### (Grabowski Against All Defendants)

44.     Grabowski incorporates by reference the allegations set forth in paragraphs 1 through 43 above as if specifically set forth herein.

45.     The Consulting Agreement, the Merger Agreement, and other presently unknown agreements relating to the merger constituted valid and binding contracts between Grabowski and Defendants, or valid and binding contracts which conferred rights and privileges upon Grabowski as a third party beneficiary or otherwise.

46.     Grabowski has performed all of his obligations arising under the Consulting Agreement, the Merger Agreement and other presently unknown agreements relating to the merger.

47.     Each Defendant has breached one or more of the Consulting Agreement, the Merger Agreement, and/or other presently unknown agreements relating to the merger in the manner described above in paragraphs 34-35, 38, and 43.

48.    As a direct and proximate result of Defendants' contractual breaches, Grabowski has sustained severe injury, loss, and damage for which recovery is sought in this action in an amount to be proven at trial.

## COUNT II

### Breach Of The Implied Covenant Of Good Faith And Fair Dealing
### (Grabowski Against All Defendants)

49.    Grabowski incorporates by reference the allegations set forth in paragraph 1 through 48 above as if specifically set forth herein.

50.    As a matter of law, the Consulting Agreement, the Merger Agreement, and other presently unknown agreements relating to the merger contained implied covenants of good faith and fair dealing that obligated each party thereto to conduct itself in such a manner so as not to deprive the other party or any third party beneficiary of the benefit of its bargain.

51.    Grabowski has at all times conducted himself in such a manner so as not to deprive Defendants of the benefits of their bargains under the Consulting Agreement, the Merger Agreement, and other presently unknown agreements relating to the merger.

52.    Each Defendant has breached some or all of the covenants of good faith and fair dealing implied in the Consulting Agreement, the Merger Agreement, and/or other presently unknown agreements relating to the merger in the manner described above, including in paragraphs 34-35, 38, and 43.

53.    As a direct and proximate result of Defendants' breaches of the implied good faith covenants, Grabowski has sustained severe injury, loss, and damage for which recovery is sought in this action in an amount to be proven at trial.

18

## COUNT III

### Violations Of M.G.L. c. 93A

### (Grabowski Against All Defendants)

54.    Grabowski incorporates by reference the allegations set forth in paragraphs 1 through 53 above as if specifically set forth herein.

55.    Grabowski and Defendants are engaged in trade or commerce in Massachusetts.

56.    Defendants through their above-described acts, omissions, statements, misrepresentations, negligence and breaches of contract have conducted their business by engaging in unfair and deceptive acts and practices against Grabowski in violation of Sections 2 and 11 of Massachusetts General Laws Chapter 93A, and the rules and regulations promulgated thereunder.

57.    Defendants' unfair and deceptive acts and practices have caused Grabowski to sustain severe injury, loss, and damage for which recovery is sought in this action in an amount to be proven at trial.

58.    Upon information and belief, Defendants' unfair and deceptive acts and practices were undertaken intentionally, willfully and knowingly for the purpose of defrauding and deceiving Grabowski, and as such entitle Grabowski to multiple damages and attorney's fees as provided for in Section 11 of Massachusetts General Laws Chapter 93A.

## COUNT IV

### Promissory Estoppel

### (Grabowski Against QualCore Analog)

59.    Grabowski incorporates by reference the allegations set forth in paragraphs 1 through 58 above as if specifically set forth herein.

19

60.     In connection with the Consulting Agreement and the addendum attached thereto dated April 8, 1998, LEDA Systems unambiguously promised to compensate Grabowski by making, *inter alia*, deferred cash payments, stock option grants, and royalty percentage payments. LEDA Systems expected and intended these promises to induce Grabowski to provide it with professional Marketing Consulting services.

61.     In reasonable reliance on LEDA Systems' promises of compensation, Grabowski did in fact provide professional marketing consulting services to LEDA Systems. Such reliance was detrimental to Grabowski because LEDA Systems never honored its promises to compensate him, and Grabowski lost time and money, and suffered opportunity costs, by providing uncompensated services.

62.     As a direct and proximate result of Grabowski's detrimental reliance, Grabowski has sustained severe injury, loss, and damage in an amount to be proven at trial. Moreover, injustice can be avoided in this action only by enforcement of LEDA Systems' promises to compensate Grabowski.

## COUNT V
### Quantum Meruit
### (Grabowski Against QualCore Analog)

63.     Grabowski incorporates by reference the allegations set forth in paragraphs 1 through 62 above as if specifically set forth herein.

64.     Grabowski conferred measurable benefits upon LEDA Systems in the form of professional Marketing Consulting services with the reasonable expectation that he would be compensated therefor.

65.    LEDA Systems accepted and benefited from the professional Marketing Consulting services provided by Grabowski under circumstances where a reasonable person would have expected to be obligated to pay Grabowski for those services. By not paying for those services, LEDA Systems has been unjustly enriched to the detriment of Grabowski.

66.    As a direct and proximate result of LEDA Systems' unjust enrichment, Grabowski has sustained severe injury, loss, and damage for which recovery is sought in this action in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Grabowski respectfully requests that this Court:

1.    Award him damages in an amount to be determined at trial, plus interest, costs, and reasonable attorneys fees as provided by law;

2.    Award him multiple damages plus interest costs, and reasonable attorneys fees as provided by Massachusetts General Laws Chapter 93A;

3.    Award him the amount of stock or stock options in QualCore Analog, QGI, or TeraBurst to which he is legally entitled, or the appropriate monetary value of the stock or stock options to which he is legally entitled; and

4.    Grant such other relief as this Court deems just and proper.

21

## <u>JURY DEMAND</u>

Grabowski demands a jury trial on all issues so triable.

Dated: May 6, 2004

Respectfully submitted,

RALPH E. GRABOWSKI

By his attorneys,

Marc N. Henschke (BBO No. 636146)
Karen Dahlberg
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
111 Huntington Avenue, Suite 1300
Boston, Massachusetts 02199-7610
Tel. (617) 267-2300

35015308.1

22

**A**

*Ralph E. Grabowski*
*marketingVP*
*57 Sunset Rock Road*
*Andover, MA  01810-4828*

February 12, 1997

Gregory Peterson
President
Leda Systems
Suite 630
5429 LBJ Freeway
Dallas, TX  75240

Dear Greg,

Thank you for the forty man-day assignment to help kick-start Leda Systems with marketing assistance as your VP of Marketing on a temporary executive basis.  This letter confirms the terms that we have discussed. Attached is my fee schedule.  My fee is $2,500 per day, plus expenses. Expenses involving overnight travel outside the States of Massachusetts or New Hampshire will be approved in advance by Leda Systems; from either Gregory Peterson, Charles Stern, or John Horst.  For Leda Systems, and for a forty man-day assignment, I will provide services for $1,500 per man-day; with a mixture of cash, deferred compensation, and stock options.

During the first twenty (20) man-day period:

1-- one-half as cash, $750 per man-day, payable as an advance deposit of $7,500 for the first ten days of work, and from then on as $7,500 before the second increment of ten man-days.

2-- one-half as deferred compensation, $750 per man-day, payable as 20% of any Leda Systems' revenue, debt, or equity; due within five (5) business days upon Leda Systems' receipt of any such funds.

3-- stock option, as 20,590 shares of January 27, 1997, Leda Systems common stock, at 85% of the current price of $2 per share, which is $1.70 per share.  The purchase price of 20,590 shares at $1.70 per share will be $35,003.  This stock option will be immediately vested in full and inheritable by my heirs.

----------

Before the third and fourth periods of ten man-days each, Leda Systems will have the right to declare the subsequent ten (10) man-day period as "deferred" or "non-deferred."

LED--3

VP OF MARKETING FOR TECHNOLOGY-BASED STARTUPS
508-470-3930, 508-470-1304 FAX, marketingVP.com, ralph@marketingVP.com

*Ralph E. Grabowski*
*marketing VP*

- 2 -
February 12, 1997
Gregory Peterson
Leda Systems

During a ten (10) man-day period declared as "deferred."

1-- one-half as cash, $750 per man-day, payable as an advance deposit of $7,500 for the ten days of work.

2-- one-half as deferred compensation, $750 per man-day, payable as 20% of any Leda Systems' revenue, debt, or equity; due within five (5) business days upon Leda Systems' receipt of any such funds.

3-- stock option, as 10,295 shares of January 27, 1997, Leda Systems common stock, at 85% of the current price of $2 per share, which is $1.70 per share. The purchase price of 10,295 shares at $1.70 per share will be $17,501.50. This stock option will be immediately vested in full and inheritable by my heirs.

----------

During a ten (10) man-day period declared as "non-deferred."

1-- cash of $1,500 per man-day, payable as an advance deposit of $15,000 for the ten days of work.

2-- stock option, as 5,883 shares of January 27, 1997, Leda Systems common stock, at 85% of the current price of $2 per share, which is $1.70 per share. The purchase price of 5,883 shares at $1.70 per share will be $10,001.10. This stock option will be immediately vested in full and inheritable by my heirs.

----------

Additionally, I can exercise all or part of the stock options at a time of my choosing, up to ten (10) years after the completion of any period, by mailing a certified letter to Leda Systems. Payment for the options exercised will be in the form of Cashier's Certified Bank Check or Wire Transfer. The date of exercising the option would be the postmark date. I will be given access to all the information and data given to any Leda Systems stockholder, even though I might not yet be a stockholder.

Please confirm your understanding by signing both copies of this, and the fee schedule, having both notarized; and returning one set.

Ralph E. Grabowski      Gregory Peterson, President, Leda Systems
February 1_, 1997                    /1997

*Linda A. Fiel Notary*
*My Commission Expires 10-3-97*

J. DAVE BENNETT
Notary Public, State of Texas
My Commission Expires 07-26-1997

*VP OF MARKETING FOR TECHNOLOGY-BASED STARTUPS*

*Ralph E. Grabowski*
*VP of Marketing for startups*

*marketingVP*
*57 Sunset Rock Road*
*Andover, MA   01810-4828*
*508-470-3930*
*508-470-1304  FAX*
*marketingVP.com*
*ralph@marketingVP.com*

FOR TECHNOLOGY-BASED STARTUPS

## FEE SCHEDULE

| | |
|---|---|
| DAILY | $2,500 /day, or |
| PACKAGING FOR FUND RAISING | Initial fee of $20,000 to $150,000 plus 10% of the first $2 million, plus 5% of the next  2 million, plus 4% of the next  2 million, plus 3% of the next  2 million, plus 2% of any amount over $8 million |
| EXPENSES | All actual expenses. |
| TERMS | Net 10 days for established clients. Payment in advance, or 50% deposit for new clients. Expenses billed as incurred or an advance requested. On-site work billed portal-to-portal.  One-half day minimum for on-site assignments within twenty miles or thirty minutes travel time.  One full day minimum for on-site work beyond twenty miles or thirty minutes travel time. The laws and the courts of the State of Massachusetts shall apply.  Valid through 1997. |

## ACCEPTED

Printed name        Gregory Peterson

Title        President / CEO

For company        LEDA SYSTEMS

P.O. Number

2 / 14 / 1997

J. DAVE BENNETT
Notary Public, State of Texas
My Commission Expires 07-26-1997

**Ralph E. Grabowski**
*VP of Marketing for startups*

**marketingVP**
57 Sunset Rock Road
Andover, MA  01810-4828
508-470-3930
508-470-1304 FAX
marketingVP.com
ralph@marketingVP.com

FOR TECHNOLOGY-BASED STARTUPS

Ralph E. Grabowski
[signature]                                          4/8/97
marketingVP
                                    [signature]
                                    PRESIDENT/COO
                                    Gregory Peterson
April 8, 1997
Added to Contract
of February 18, 1997
Notarized February 12 and
14th 1997

## FEE SCHEDULE

| | |
|---|---|
| DAILY | $2,500 /day, or |
| PACKAGING FOR FUND RAISING | Initial fee of $20,000 to $150,000, plus |

10% of the first $2 million, plus
5% of the next  2 million, plus
4% of the next  2 million, plus
3% of the next  2 million, plus
2% of any amount over $8 million

| | |
|---|---|
| EXPENSES | All actual expenses. |
| TERMS | Net 10 days for established clients. |

Payment in advance, or 50% deposit for new clients.
Expenses billed as incurred or an advance requested.
On-site work billed portal-to-portal.  One-half day minimum
for on-site assignments within twenty miles or thirty
minutes travel time.  One full day minimum for on-site work
beyond twenty miles or thirty minutes travel time.
The laws and the courts of the State of Massachusetts
shall apply.  Valid through 1997.

## ACCEPTED

Printed name    _____

Title           _____

For company     _____

P.O. Number     _____

                _____/_____/ 1997