UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RALPH E. GRABOWSKI,<br><br>    Plaintiff,<br><br>v.<br><br>QUALCORE LOGIC (ANALOG),<br>INC.; QUALCORE GROUP, INC.; and<br>TERABURST NETWORKS, INC.,<br><br>    Defendants. | No. 04-CV-10905 (MEL) |

**AMENDED MEMORANDUM OF LAW OF TERABURST NETWORKS, INC. and QUALCORE GROUP, INC. IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

  Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, TeraBurst Networks, Inc. ("TeraBurst") and QualCore Group, Inc. ("QualCore Group") submit this memorandum of law solely in support of their motion to dismiss for lack of personal jurisdiction. TeraBurst and QualCore Group, each Delaware corporations headquartered in California, have **_no_** ongoing contacts with Massachusetts and have had **_none_** that are related to this cause of action. As there have been no contacts between TeraBurst or QualCore Group and Massachusetts that give rise to this cause of action, the requisite factors set forth in the Massachusetts long-arm statute have not been satisfied. See Mass. Gen. Laws. ch. 223A, § 3 (2004); Gray v. O'Brien, 777 F.2d 864, 867 (1st Cir. 1985) ("[T]he exercise of jurisdiction under the Massachusetts long-arm statute will nonetheless fail if the cause of action did not arise from defendant's [conduct] in Massachusetts.") Similarly, the Court cannot exercise either specific or general personal jurisdiction consistent with the Due Process Clause of the Constitution, as set forth in World-Wide Volkswagen and its progeny. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980) (requiring sufficient "minimum contacts" between a defendant and the forum

state so that the "maintenance of the suit 'does not offend "traditional notions of fair play and substantial justice"'") (citations omitted); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (requiring a defendant's contacts to be more than "'random,' 'fortuitous,' or 'attenuated'") (citations omitted); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) (requiring for specific jurisdiction that the plaintiff's claim arise out of the defendant's contacts with the forum state, and for general jurisdiction that the defendant have "continuous and systematic" contacts with the forum state.)  Accordingly, this Court cannot, as a matter of law, exercise personal jurisdiction over TeraBurst or QualCore Group in a manner consistent with either the Massachusetts long-arm statute or the Due Process Clause of the Constitution and should thus dismiss Plaintiff's claims against each of them.

I.  **FACTUAL BACKGROUND**

    A.  **The Key Players: TeraBurst, QualCore Group and LEDA Systems (now QualCore Logic (Analog), Inc.)**

TeraBurst is a Delaware corporation with its principal place of business in California. (Declaration of Johan Pirot ("Pirot Decl.") ¶ 3.)  QualCore Group is wholly-owned subsidiary of TeraBurst, also incorporated in Delaware with its headquarters in California.  (Declaration of Mahendra Jain ("Jain Decl.") ¶¶ 3-4.)  LEDA Systems ("LEDA") was a privately held Texas corporation with its primary place of business in Texas that re-incorporated under Delaware law in 1997.  (Id. ¶ 7.)

On August 20, 2003, pursuant to the filing of a Certificate of Merger with the Delaware Secretary of State, a wholly owned subsidiary of QualCore Group ("Merger Sub"), established solely for the purposes of effectuating the merger, merged with and into LEDA (the "Merger"). (Id. ¶ 6.)  As a result of this transaction, Merger Sub ceased to exist and LEDA continued as the surviving corporation and as a wholly-owned subsidiary of QualCore Group.  (Id.)  Also in

connection with this transaction, LEDA changed its name to QualCore Logic (Analog), Inc. ("Analog"). (Id.) Analog has existed since August 20, 2003 as a wholly-owned subsidiary of QualCore Group. (Id.) Prior to the Merger, there was no relationship of any kind or nature between LEDA on the one hand, and TeraBurst or QualCore Group, on the other. (Id. ¶ 8; Pirot Decl. ¶ 7.)

### B. Plaintiff's Claims[1]

In his Complaint, the Plaintiff, Ralph E. Grabowski ("Plaintiff"), asserted four claims sounding in contract or quasi-contract: breach of contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, and quantum meruit. (See Compl. ¶¶ 44-53, 59-66.) Plaintiff also asserted a violation of Mass. Gen. L. ch. 93A. (Id. ¶¶ 54-58.) Three of these claims name TeraBurst and QualCore Group as defendants: breach of contract, breach of implied covenant of good faith and fair dealing, and violation of Mass. Gen. L. chapter 93A[2]. (Id. ¶¶ 44-58.)

By his own account, Plaintiff's claims arise out of an alleged consulting agreement with LEDA, governing compensation for marketing services to be provided by Plaintiff to LEDA in 1997. (Id. ¶¶ 12-42)[3] All of the allegations in the Complaint relate to that 1997 relationship with LEDA, many years before the 2003 merger. In fact, on the face of Plaintiff's Complaint, it is beyond peradventure that any purported agreement by Plaintiff was with LEDA only - not with

---

[1] The following facts are taken from Plaintiff's Complaint and are assumed to be true only for purposes of this Motion to Dismiss, filed pursuant to Rule 12(b)(2).

[2] Defendant QualCore Logic (Analog), Inc. has separately moved to dismiss Count III, alleging violation of Chapter 93A, on the grounds that any such claim is time-barred.

[3] It should be noted that ¶ 19 of the Complaint states an incorrect date in its discussion of the amended Consulting Agreement. The Complaint refers to April 8, 2003; read in context, the correct date is plainly April 8, 1997.

either TeraBurst or QualCore Group, who had no relationship with LEDA until 2003. As alleged more fully in the Complaint:

- LEDA hired Plaintiff as a marketing consultant in early 1997 and negotiated a Consulting Agreement with him. The agreement contained a Massachusetts choice of forum provision as to LEDA. (Id. ¶¶ 12-16.)

- The Consulting Agreement was amended in 1997 as to its payment terms. (Id. ¶¶ 19-22).[4]

- In June, 1997, Plaintiff communicated with LEDA's President, Greg Peterson, summarizing the compensation he alleged was due to him as of that date. Peterson allegedly confirmed those amounts. (Id. ¶¶ 24-26.)

- In July, 1997, Peterson instructed Plaintiff to stop performing services for the company until certain conflicts over payment were resolved. (Id. ¶ 27.)

- Over the next few months, Plaintiff's counsel communicated with Peterson in an attempt to secure payment for Plaintiff. (Id. ¶¶ 28-32.)

- In November, 1997 and March, 1998, LEDA made two deferred cash payments to Plaintiff that totaled an amount short of what Plaintiff believed he was owed. (Id. ¶ 32.)

- In June, 1998, Peterson sent Plaintiff a "Termination, Release and Settlement Agreement." That agreement and subsequent discussions with Peterson about its terms were unacceptable to Plaintiff. Plaintiff never signed the agreement. (Id. ¶¶ 33-36.)

- Also in June, 1998, Plaintiff attempted to exercise 1,000 stock options, to which he believed he was entitled. Those options were never granted by LEDA. (Id. ¶¶ 37-38.)

- In November, 1998, Plaintiff spoke with LEDA's Founder and Chief Technical Officer concerning what Plaintiff continued to allege he was owed. That was the final communication between Plaintiff and LEDA. (Id. ¶ 39.)

- Years later, upon learning of the Merger and believing that he owned stock options, Plaintiff brought this federal court action. (Id. ¶¶ 40-43.)

In short, Plaintiff's dealings, by his own factual allegations, were entirely and exclusively with LEDA. At the time of the alleged breach, TeraBurst and QualCore Group were in no way associated with LEDA or with Plaintiff. (Pirot Decl. ¶¶ 7, 39; Jain Decl. ¶¶ 8, 36.) Indeed,

---

[4] See note 3, Id.

TeraBurst did not even exist until January, 2000 (Pirot Decl. ¶ 3), and QualCore Group was not incorporated until August, 1998. (Jain Decl. ¶ 3.) No formal relationship between LEDA and TeraBurst or QualCore Group existed prior to the August, 2003 merger - five years after Plaintiff's last dealings with LEDA. (Pirot Decl. ¶ 7; Jain Decl. ¶ 8.) Plaintiff was never an employee or consultant of TeraBurst or QualCore Group. (Pirot Decl. ¶ 34; Jain Decl. ¶ 32.) Neither TeraBurst nor QualCore Group ever entered into a contract for services with Plaintiff, nor have they promised to pay him for any services. (Pirot Decl. ¶ 35; Jain Decl. ¶ 33.) Moreover, neither company ever directed Plaintiff to perform work for them, nor has Plaintiff ever performed services that have benefited them. (Pirot Decl. ¶¶ 36-37; Jain Decl. ¶¶ 34-35.)

## II.     LEGAL ARGUMENT AND CITATION OF AUTHORITIES

This Court should dismiss Plaintiff's claims against TeraBurst and QualCore Group for lack of personal jurisdiction.

### A.     Neither the Massachusetts Long-Arm Statute Nor Principles of Constitutional Due Process Confer Personal Jurisdiction Over TeraBurst and QualCore Group in Massachusetts.

#### 1.     Plaintiff bears the burden of demonstrating specific facts establishing this Court's personal jurisdiction over TeraBurst and QualCore Group.

Plaintiff bears the burden of proving that this Court has personal jurisdiction over non-resident defendants, TeraBurst and QualCore Group. See Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). The quantum of proof required to establish jurisdiction must go beyond "allegations in a lawyer's brief or legal memorandum," and must include competent evidence of specific facts. Barrett v. Lombardi, 239 F.3d 23, 27 (1st Cir. 2001). In addition, Plaintiff must first establish that personal jurisdiction is authorized under the Massachusetts long-arm statute, and only then move on to determine whether the exercise of jurisdiction over TeraBurst and QualCore Group comports with constitutional due process. See Gray v. O'Brien, 777 F.2d 864,

866-67 (1st Cir. 1985). In this case, the exercise of jurisdiction over TeraBurst and QualCore Group would violate the requirements of both the long arm statute and constitutional due process because neither company has the requisite minimum contacts with Massachusetts and certainly none that relate to this cause of action. Moreover, Plaintiff has failed, as he must, to allege specific, competent facts sufficient to establish personal jurisdiction over either entity.

### 2.  The legal standard for asserting personal jurisdiction over a nonresident defendant.

The Massachusetts long-arm statute authorizes this Court to exercise personal jurisdiction only when two criteria are met: 1) the defendant engages in one of the enumerated actions in Massachusetts, and 2) the cause of action arises from defendant's contacts with the forum state. See Mass. Gen. Laws ch. 223A, § 3 (2004); Gray, 777 F.2d at 867. The Massachusetts long-arm statute imposes "a set of constraints on the assertion of *in personam* jurisdiction in addition to the restraints imposed by the Constitution" allowing the constitutional analysis to be reached *only* "when some basis for jurisdiction enumerated in the statute has been established." Gray, 777 F.2d at 866. As such, the Court must first find its jurisdictional authority under the long-arm statute before exercising jurisdiction.

Due process requires sufficient "minimum contacts" between a defendant and the forum state so that the "maintenance of the suit 'does not offend "traditional notions of fair play and substantial justice."'" World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980) (citations omitted). A defendant's contacts must be more than "'random,' 'fortuitous,' or 'attenuated.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (citations omitted). Indeed, in order for personal jurisdiction to be appropriately exercised, a defendant must "purposefully avail[]" itself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

-6-

Under the due process analysis, a court may exercise either specific or general jurisdiction over a defendant. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 & nn.8-9 (1984); Donatelli v. Nationall Hockey League, 893 F.2d 459, 462-63 (1st Cir. 1990). Specific jurisdiction exists where the plaintiff's claim arises out of the defendant's contacts with the forum state. Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 414 & n.8. General jurisdiction permits a court to subject a non-resident defendant to a lawsuit in the forum state for claims that are wholly unrelated to any contact it has with the forum state so long as the defendant has other "sufficient contacts" with the state. See id. at 414-15 & n.9. Plaintiff cannot satisfy any of these standards.

**B.     The Court Lacks Authority to Exercise Personal Jurisdiction Under the Massachusetts Long-Arm Statute.**

Since Plaintiff cannot establish *any* relevant contacts between Massachusetts and either TeraBurst or QualCore Group, including in particular none that give rise to his claims (or are evenly remotely related), this Court cannot exercise personal jurisdiction over this matter, consistent with the long-arm statute. In relevant part, the Massachusetts long-arm statute provides:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to *a cause of action* in law or equity *arising from* the person's (a) transacting any business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injury by an act or omission in this commonwealth; (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

Mass. Gen. Laws. ch. 223A, § 3 (2004) (emphasis added).

Plaintiff's complaint alleges, in generalized terms, that this Court can properly exercise jurisdiction over TeraBurst and QualCore Group because they have engaged in one of the jurisdiction-conferring activities. Plaintiff's complaint does not, however, specify the nature of the alleged contacts with Massachusetts and how they give rise to his cause of action. Plaintiff has not done so because he cannot; in fact, no such contacts exist. Plaintiff's cause of action cannot be traced to any activity engaged in by either TeraBurst or QualCore Group. As the declarations submitted by Johan Pirot and Mahendra Jain assert, in the time period preceding their merger with LEDA, when the alleged actions giving rise to the Complaint arose, neither TeraBurst nor QualCore Group had any relevant relationship with Plaintiff. (Pirot Decl. ¶ 39; Jain Decl. ¶ 36.)

Furthermore, QualCore Group never has had any contact with Massachusetts (Jain Decl. ¶ 31), while TeraBurst has had virtually none. (Pirot Decl. ¶¶ 30-33.) Neither company is incorporated in Massachusetts and both are headquartered 3,000 miles away in California. (Pirot Decl. ¶¶ 3, 9; Jain Decl. ¶¶ 3, 10.) Neither company has any office or other place of business, addresses, telephone or business directory listings, property, inventory, sales, contracts, assets, bank accounts, shareholders, employees or agents in Massachusetts. (Pirot Decl. ¶¶ 10, 11, 17, 18, 20-25; Jain Decl. ¶¶ 11, 12, 18, 19, 21-26.) Neither company has a registered agent or a designated agent for service in Massachusetts. (Pirot Decl. ¶¶ 12, 16; Jain Decl. ¶¶ 13, 17.) Neither company has registered to transact business or consented to be sued in Massachusetts. (Pirot Decl. ¶¶ 13, 15; Jain Decl. ¶¶ 14, 16.) Neither company has paid or been required to pay, unemployment taxes or any other taxes in Massachusetts, nor has either company directed any fund-raising efforts or advertising here. (Pirot Decl. ¶¶ 27-28; Jain Decl. ¶¶ 28-29.)

Indeed, the only contact that either Defendant has even had with Massachusetts are TeraBurst's short-term relationship with a vendors, beginning in January 2001 and completed in 2002 (before the Merger took place), and its episodic purchases from a handful of suppliers who invoiced them from Massachusetts. (Pirot Decl. ¶¶ 30-32). As to the former, TeraBurst entered into a development agreement with a subsidiary of a non-Massachusetts company; that agreement was not governed by Massachusetts law and did not include Massachusetts as its forum selection. (Id. ¶ 31.) Two to three TeraBurst employees traveled to Massachusetts for a limited number of meetings, on no more than five occasions, in 2001 in connection with this vendor.[5] (Id.) The vendor relationships were wholly unrelated to Plaintiff's claims in this action. (Id. ¶ 38.) As to the suppliers, TeraBurst purchases optical and networking parts through suppliers nationwide. (Id. ¶ 30.) Of the hundreds of vendors that respond to its purchase orders, a handful (i.e., approximately fifteen) have sent invoices to TeraBurst from Massachusetts. (Id.)

In sum, there is no relationship between QualCore Group and Massachusetts. Additionally there is virtually no relationship between TeraBurst and Massachusetts and certainly none that gave rise to Plaintiff's claims.

Such lack of contact relating to the cause of action deprives the Court of jurisdiction over TeraBurst and QualCore Group. See Gray, 777 F.2d at 867. Moreover, as set forth below, this Court is also precluded from exercising personal jurisdiction over TeraBurst and QualCore Group under the due process doctrines of specific and general jurisdiction.

---

[5] In addition, in 2000, one TeraBurst employee attended at least one conference in Massachusetts, wholly unrelated to Plaintiff's claims, and also in connection with this vendor. (Pirot Decl. ¶ 32.)

### C. The Court Lacks Authority to Exercise Personal Jurisdiction Under Constitutional Due Process.

#### 1. The exercise of specific personal jurisdiction is not appropriate.

A three part test must be satisfied before specific jurisdiction can be exercised:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Elec. Radio & Mach. Workers of America v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992). The "Gestalt" factors are five criteria, constructed as a test by the Supreme Court, of whether the exercise of jurisdiction is fair and reasonable, namely: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. Id. at 1088 (citing Burger King, 471 U.S. at 477). In this case, neither of the first two elements of the First Circuit's specific jurisdiction test are satisfied, and the balance of the "Gestalt" factors establishes that the exercise of jurisdiction over TeraBurst or QualCore Group is neither fair nor reasonable.

#### a. The "relatedness" prong is not satisfied.

First, the relatedness prong is not satisfied because Plaintiff's claims do not arise from any contact between TeraBurst or QualCore Group and Massachusetts. In fact, neither have had *any* relevant contact with Massachusetts related to Plaintiff's claims. Plaintiff's claims arise out of his relationship with Analog (formerly LEDA) *only*. Moreover, Plaintiff's business relationship with LEDA ended in 1997, and by his own admission, *all* dealings with LEDA

ceased in 1998 - five years before TeraBurst or QualCore Group had any dealing of any kind or nature whatsoever with Analog (let alone with Plaintiff).  In sum, Plaintiff does not now have, nor has he ever had, any relationship with TeraBurst or QualCore Group.  (Pirot Decl. ¶ 39; Jain Decl. ¶ 36.)

Second, even if Plaintiff could somehow establish that he had a relationship with TeraBurst or QualCore Group in some other capacity, "[t]he relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state."  Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995).  Here, there simply is no contract, agreement, or promise between Plaintiff and TeraBurst or QualCore Group.[6]  (Pirot Decl. ¶¶ 34-37; Jain Decl. ¶¶ 32-35.)  As alleged by Plaintiff in his Complaint, any agreements and discussions with Plaintiff regarding his compensation purportedly occurred between Plaintiff and LEDA – not TeraBurst or QualCore Group.  (See Compl. ¶¶ 12-43.)  Moreover, neither TeraBurst nor QualCore Group had any contact with LEDA until the August, 2003 merger (Pirot Decl. ¶ 7; Jain Decl. ¶ 8), five years after Plaintiff's last communication with LEDA.[7]  (See Compl. ¶ 39 .)  In short, because neither TeraBurst nor QualCore group ever retained or worked with Plaintiff, Plaintiff's claims based upon services he purportedly performed are unrelated to them.

---

[6] Pursuant to that certain Merger Agreement among TeraBurst, QualCore Group and Analog, dated July, 31, 2003, Analog is the successor in interest to LEDA, not TeraBurst or QualCore Group.

[7] Indeed, even the Merger itself has no relationship to Massachusetts - it was a transaction between two Delaware corporations headquartered in California (TeraBurst and QualCore Group) and a third Delaware corporation headquartered in Texas (LEDA).  (Pirot Decl. ¶¶ 3, 6; Jain Decl. ¶¶ 3, 6, 7.)

-11-

        **b.**        **TeraBurst and QualCore Group have not purposefully availed themselves of the benefits and protections of Massachusetts law.**

The function of the purposeful availment requirement is to assure that personal jurisdiction is "not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." Sawtelle, 70 F.3d at 1391 (citation omitted). "[T]he cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability." Id.

TeraBurst and QualCore Group have not purposefully availed themselves of Massachusetts law because they never contracted with Plaintiff or initiated any contact with him here or anywhere. Indeed, it appears that they are named as Defendants based solely upon their corporate relationship with Analog (formerly LEDA). As stated above, however, this involvement began years after Plaintiff alleges to have ended his purported service to LEDA.[8] There is no reason to believe that either TeraBurst or QualCore Group ever voluntarily submitted themselves to Massachusetts jurisdiction for actions LEDA took years and years before the Merger. Furthermore, as TeraBurst and QualCore Group have had virtually no contacts with Massachusetts (even after the merger), it was never foreseeable to either TeraBurst or QualCore Group that they could be haled into court there.

        **c.**        **Exercising jurisdiction over TeraBurst and QualCore Group would not be reasonable.**

The Court should not even consider the "Gestalt" factors to determine the "reasonableness" of jurisdiction unless Plaintiff is able to demonstrate sufficient minimum contacts with the forum state under the first two prongs of the analysis. See Sawtelle, 70 F.3d at

---

[8] Moreover, Analog itself (a Delaware corporation headquartered in California) has no significant contacts with Massachusetts. The only reason that Analog has been sued in Massachusetts is due to the choice of forum provision in the six-year old agreement at issue between Plaintiff and *LEDA*.

1394 ("[T]he gestalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled" (quoting United Elec. Radio & Mach. Workers of America, 960 F.2d at 1091 n.11) (internal quotation marks omitted)).  As set forth above, there is no reason to consider the "Gestalt" factors here.

Even if, however, the "Gestalt" factors were relevant to consider, this stage of the analysis "evokes a sliding scale: [t]he weaker the plaintiff's showings on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction.  The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness." Id. (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994)) (internal quotation marks omitted).

In this case, the tally of the five "Gestalt" factors does not support the exercise of personal jurisdiction.  First, the burden on TeraBurst and QualCore Group of appearing in Massachusetts from California is great: they have no presence in Massachusetts, and virtually all of their witnesses and documents (to the extent they are relevant to this matter) are in Sunnyvale, California.[9]  See Ticketmaster - New York, 26 F.3d at 210-12 (finding that "[t]he burden associated with forcing a California resident to appear in a Massachusetts court is onerous in terms of distance" and affirming the lower court's denial of jurisdiction based primarily on this factor).

Second, the efficient administration of justice requires the Court to decline jurisdiction. Virtually every defense witness is located outside of Massachusetts, including everyone

---

[9] In fact, neither TeraBurst or QualCore Group believe they have documents or witnesses relevant to this litigation. Neither is the successor to LEDA's claims, they have not retained former LEDA employees and they are not in possession of LEDA's documents.  (Pirot Decl. ¶ 29; Jain Decl. ¶ 30.)

associated with LEDA (now Analog), as well as all persons associated with TeraBurst and QualCore Group (but see footnote 9, below). (Pirot Decl. ¶ 29; Jain Decl. ¶ 30.) In fact, it is likely that every witness for Plaintiff, other than Plaintiff himself, will be located outside of the Commonwealth. Moreover, most, if not all, of the relevant documents are located outside of Massachusetts. (Id.) The exercise of jurisdiction in Massachusetts will not serve the efficient administration of justice.

Third, while the plaintiff's interest in convenient relief seems to support the exercise of jurisdiction by the forum state, when many of the key witnesses and documents are outside of Massachusetts, that convenience is undermined, especially when neither TeraBurst or QualCore Group is likely to have evidentiary material related to this action. See Ticketmaster - New York, 26 F.3d at 211.

Fourth, Massachusetts does not have an interest in this litigation since Plaintiff's claims against TeraBurst and QualCore Group seem to arise solely out of their subsequent merger with LEDA - a relationship that will need to be analyzed under Delaware corporate law. "[W]here the law of the forum likely will not govern, the forum has only a generalized interest in providing a convenient courthouse in which to resolve disputes." See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 184 F. Supp. 2d 55, 68 (D. Mass. 2001) (Young, C.J.), rev'd on other grounds, 290 F.3d 42 (1st Cir.), cert. denied, 537 U.S. 1029 (2002).

Finally, while concededly "the most prominent policy implicated is the ability of a state to provide a convenient forum for its residents to redress injuries inflicted by out-of-forum actors," Sawtelle, 70 F.3d at 1395, for the reasons set forth above, neither TeraBurst nor QualCore Group inflicted any injuries on Plaintiff and have nothing to answer for, in Massachusetts or anywhere.

Ultimately, the question that must be answered is whether the maintenance of this lawsuit would offend "traditional notions of fair play and substantial justice." See International Shoe Co. v. Washington, Office of Unemployment Compensation and Placement, 326 U.S. 310, 316 (1945).  In this case, where TeraBurst and QualCore Group had no relationship to any of the events at issue in this case, have had virtually no contacts with Massachusetts, and the "Gestalt" factors do not favor jurisdiction, it would be unreasonable and a violation of the standards of fair play and substantial justice for a Massachusetts court to assert specific jurisdiction over TeraBurst and QualCore Group based upon Plaintiff's claims.

### 2. TeraBurst and QualCore Group are not subject to general personal jurisdiction.

A judicial inquiry into general jurisdiction has two stages.  Donatelli, 893 F.2d at 465.  First, the court must examine the defendant's contacts with the forum to ensure that they exist in "sufficient abundance" to comply with due process.  Id.  If such contacts are lacking, personal jurisdiction cannot be exercised.  Id.  Only if the contacts are sufficient does a court then examine the "Gestalt" factors of whether the exercise of personal jurisdiction would "comport with 'fair play and substantial justice.'"  Id. at 464 (citation omitted).  The standard for general jurisdiction "is considerably more stringent" than for specific jurisdiction.  Id. at 463 (quoting Glater v. Eli Lilly & Co., 744 F.2d 213, 216 (1st Cir. 1984)) (internal quotation marks omitted).

When general jurisdiction is in question, a defendant may be subject to the forum state's exercise of personal jurisdiction if its contacts with the state are "'continuous and systematic.'"  Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 415 (citation omitted).  A corporation's "single or isolated items of activities in a state . . . are not enough to subject it to suit on causes of action unconnected with the activities there." International Shoe Co., 326 U.S. at 317.  Furthermore, in determining whether a basis for general jurisdiction exists, the Court is to make

-15-

a "'fact specific evaluation'" of the defendant's contacts and compare them against those "contacts found to be insufficient for general jurisdiction in previous cases." United States v. Swiss American Bank, Ltd., 274 F.3d 610, 620-21 (1st Cir. 2001) (citation omitted).

As detailed in Mahendra Jain's Affidavit, QualCore Group has absolutely zero contacts with Massachusetts (Jain Decl. ¶ 31), while TeraBurst has only attenuated contacts with Massachusetts, which are neither "continuous" nor "systematic" in nature. (Pirot Decl. ¶¶ 30-33.) As set forth above, as well, neither TeraBurst nor QualCore Group had or has any relationship with Plaintiff or the events giving rise to Plaintiff's claims. (Pirot Decl. ¶¶ 34-39; Jain Decl. ¶¶ 32-36.) Neither is incorporated in Massachusetts nor have any place of business there. (Pirot Decl. ¶¶ 9-10; Jain Decl. ¶¶ 10-11.) Neither company has any offices, addresses, telephone or business directory listings, property, inventory, sales, contracts, assets, bank accounts, shareholders, employees or agents in the commonwealth. (Pirot Decl. ¶¶ 10, 11, 17, 18, 20-25; Jain Decl. ¶¶ 11, 12, 18, 19, 21-26.) Neither company has a registered agent or a designated agent for service in Massachusetts. (Pirot Decl. ¶¶ 12, 16; Jain Decl. ¶¶ 13, 17.) Neither company has registered to transact business or consented to be sued in Massachusetts. (Pirot Decl. ¶¶ 13, 15; Jain Decl. ¶¶ 14, 16.) Neither company has paid or been required to pay, unemployment taxes or any other taxes in Massachusetts, nor has either company directed any fund-raising efforts or advertising there. (Pirot Decl. ¶¶ 27-28; Jain Decl. ¶¶ 28-29.) Furthermore, the only interactions that TeraBurst had with Massachusetts (attending a few meetings, receiving invoices from a handful of suppliers in the Commonwealth and attending a conference - all unrelated to Plaintiff or Analog) are far less substantial than other contacts deemed insufficient to satisfy the stringent general jurisdiction standard. See, e.g., Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 416 (finding no general jurisdiction where defendant

sent CEO to state for contract negotiation session, sent personnel to state for training, and purchased equipment and services from corporation in state); Swiss American Bank, 274 F.3d at 621 (finding that U.S. courts lacked general personal jurisdiction over foreign defendants whose contacts with the U.S. included advertisements in an American airline magazine, a licensing agreement with a New York company, being a party in a Florida lawsuit, having a contract with an Arkansas company, engaging in a joint-venture with an Ohio company, loaning $350,000 to a Colorado company and maintaining bank accounts with four New York banks); Noonan v. Winston Co., 135 F.3d 85, 94 (1st Cir. 1998) (finding no general jurisdiction where a foreign defendant sent an employee to the forum state and solicited business in the forum state resulting in $585,000 of orders); Glater v. Eli Lilly Co., 744 F.2d 213, 215-17 (1st Cir. 1984) (finding no general jurisdiction where a nonresident defendant advertised and employed eight salespeople in the forum state who distributed information and sold products there.)  Thus, because TeraBurst and QualCore Group lack sufficient contacts with Massachusetts, the Court cannot exercise general jurisdiction.

Finally, as there are virtually no contacts whatsoever between TeraBurst and QualCore Group on the one hand, and Massachusetts on the other hand, the Court should not even consider the "Gestalt" factors.  See Sawtelle, 70 F.3d at 1394.  Nevertheless, for the reasons set forth in section II(4)(d) above, the "Gestalt" factors also do not favor the exercise of general jurisdiction.

## III.     CONCLUSION

TeraBurst and QualCore Group have had no contact with Massachusetts related to Plaintiff's claims; thus, there is no jurisdiction under the Massachusetts long-arm statute nor under the due process doctrine of specific jurisdiction.  Furthermore, their wholesale lack of significant contacts with the Commonwealth (let alone "continuous and systematic" ones) also

deprive the Court of general jurisdiction.  Accordingly, Plaintiff's claims against TeraBurst and QualCore Group should be dismissed without prejudice for lack of personal jurisdiction.

Respectfully submitted,

TERABURST NETWORKS, INC. and
QUALCORE GROUP, INC.

By their attorneys,

/s/ Michele A. Whitham
Michele A. Whitham, Esq.  BBO #553705
John M. Granberry, Esq.  BBO #647086
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02210
(617) 832-1000

Dated:  July 1, 2004