UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RALPH E. GRABOWSKI,

        Grabowski,

v.

QUALCORE LOGIC (ANALOG),
INC.; QUALCORE GROUP, INC.; and
TERABURST NETWORKS, INC.,

        Defendants.

No. 04-CV-10905 (MEL)

**TERABURST NETWORKS, INC.'S AND QUALCORE GROUP, INC.'S REPLY
IN SUPPORT OF THEIR MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION**

    In his Opposition to TeraBurst Networks, Inc.'s ("TeraBurst") and QualCore Group, Inc.'s ("QualCore Group") Motion to Dismiss, plaintiff Ralph E. Grabowski ("Grabowski") effectively admits that he lacks competent evidence of specific facts establishing that either non-resident TeraBurst or non-resident QualCore Group is subject to personal jurisdiction in Massachusetts, even though the burden was plainly his to set forth such facts in pleading his case. Notwithstanding his failure properly to plead facts sufficient to support this Court's jurisdiction over the non-resident entities, Grabowski seeks permission to undertake a fishing expedition in order to pursue extraordinarily thin and legally insufficient threads in a last-ditch effort to find personal jurisdiction where none exists. Such a fishing expedition would be futile and should not be allowed.

    Although TeraBurst and QualCore Group have already proven through sworn affidavits why this Court lacks personal jurisdiction over them, they provide with this Reply Memorandum additional detail establishing beyond peradventure just how futile Grabowski's unwarranted speculations are. *See United States v. Swiss American Bank, Ltd.*, 274 F.3d 610 (1st Cir. 2001)

(requiring plaintiff to present colorable case jurisdictional discovery would not be futile). In light of all the evidence submitted by the non-resident entities, this Court should deny Grabowski's gambit in seeking jurisdictional discovery and dismiss the non-resident entities from the case for lack of personal jurisdiction.

I. **GRABOWSKI IS NOT ENTITLED TO JURISDICTIONAL DISCOVERY**

It is black letter law that Grabowski must plead facts sufficient to establish this Court's jurisdiction over the non-resident entities. *See, e.g., Barrett v. Lombardi*, 239 F.3d 23, 27 (1st Cir. 2001); *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995). Having failed to do so, he should not be permitted to engage in a fishing expedition to try to search out such facts, particularly where, as here, the record evidence shows that further discovery would be futile. *See Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34 (1st Cir. 2000) (affirming denial of jurisdictional discovery because such discovery was "unlikely to be useful"); *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 681 (1st Cir. 1992) (affirming dismissal for lack of personal jurisdiction and concluding that, even if jurisdictional discovery had been permitted, it would have been futile).

District courts, rather than routinely granting jurisdictional discovery as Grabowski suggests, may prohibit it if the facts show it is unnecessary. *See, e.g., United States v. Swiss American Bank, Ltd.*, 274 F.3d 610, 625-27 (1st Cir. 2001) (affirming denial of jurisdictional discovery); *Dynamic Image Techs., Inc.*, 221 F.3d at 38-39 (same); *Crocker v. Hilton Int'l Barbados, Ltd.*, 976 F.2d 797 (1st Cir. 1992) (same); *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d at 681 (same). There is no automatic right to jurisdictional discovery. *Sunview Condominium Ass'n v. Flexel Int'l, Ltd.*, 116 F.3d 962, 964 (1st Cir. 1997) (affirming denial of jurisdictional discovery and noting that there is no absolute right to such discovery). Moreover, district courts enjoy broad discretion in deciding whether to permit jurisdictional discovery, and a district

court's denial of such discovery may be reversed on appeal only upon a clear showing of manifest injustice. *See Swiss American Bank*, 274 F.3d at 626; *Crocker*, 976 F.2d at 801. Thus, appellate courts permit district courts wide latitude to deny jurisdictional discovery where, as here, such discovery is unwarranted.

Further, Grabowski's suggestion that he would use "jurisdictional" discovery to develop and assert new claims is, quite frankly, an abuse of process that this Court should not condone. *See*, Opposition at 16-17 ("Moreover, with the benefit of discovery, Grabowski could potentially amend his Complaint to assert stand-alone torts sounding in conversion or intentional interference with contract . . . ."). The Federal Rules of Civil Procedure limit discovery to "any matter, not privileged, that is relevant to the claim or defense of any party...." Fed. R. Civ. P. 26(b)(1). Grabowski's explicitly acknowledged effort to exceed the permissible scope of discovery and initiate a fishing expedition of unlimited scope should be rejected out of hand.[1]

On the allegations in the Complaint and on the facts of this case -- as already discussed in TeraBurst's and QualCore Group's previous memorandum and as supported by sworn affidavits there and here -- Grabowski cannot establish that jurisdiction exists. As there simply are no facts to support Grabowski's flights of fantasy about jurisdiction over the non-resident entities, further jurisdictional discovery would be futile and the non-resident entities should be dismissed from this action.

---

[1] In any event, even if Grabowski were to discover facts that would allow him to assert the tort of conversion, he still could not assert jurisdiction in this case on that basis. *See United States v. Swiss American Bank, Ltd.*, 191 F.3d 30, 37 (1st Cir. 1999) (noting that "the legal injury occasioned by the tort of conversion is deemed to occur where the actual conversion takes place" and thus finding no jurisdiction in Massachusetts based on alleged conversion occurring outside of Massachusetts).

II. **GRABOWSKI CANNOT ESTABLISH JURISDICTION OVER THE NON-RESIDENT ENTITIES UNDER THE MASSACHUSETTS LONG-ARM STATUTE OR THE SPECIFIC JURISDICTION PRONG OF THE FEDERAL DUE PROCESS CLAUSE WHERE, AS HERE, NEITHER TERABURST NOR QUALCORE ENGAGED IN ACTS IN MASSACHUSETTS THAT GAVE RISE TO PLAINTIFF'S CLAIMS**

The touchstone of jurisdiction under both the Massachusetts long-arm statute and the specific jurisdiction prong of the federal Due Process Clause is a relationship between the claims and the alleged acts upon which jurisdiction is based. Under either provision, Grabowski must show that his claims against non-resident entities arise from acts in the Commonwealth of Massachusetts.[2] *See* Mass. Gen. L. ch. 223A, § 3; *Gray v. O'Brien*, 777 F.2d 864, 866-67 (1st Cir. 1985) (courts may *only* assert jurisdiction over the non-resident entities if such jurisdiction satisfies the Massachusetts long-arm statute in the first instance).

### A. Grabowski Cannot Show That His Claims Arise From Acts of the Non-Resident Entities in Massachusetts

#### 1. Grabowski concedes that none of his claims arise from acts of the non-resident entities prior to 2003

As an initial matter, Grabowski effectively concedes in his Opposition that the non-resident entities had *no* involvement in any of the acts alleged to have occurred before the merger of Grabowski's employer, LEDA Systems, Inc. ("LEDA") into defendant QualCore Logic (Analog), Inc. ("Analog") in July of 2003. The Merger Agreement for the 2003 transaction confirms this. *See* Declaration of Johan Pirot ("Pirot Decl.") ¶ 7; Declaration of Mahendra Jain ("Jain Decl.") ¶ 8; Merger Agreement and Plan of Reorganization By and Among

---

[2] The long-arm statute also permits jurisdiction over tort claims arising from acts committed outside Massachusetts if the alleged tortious injury occurred in Massachusetts and if the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth...." Mass. Gen. L. ch. 223A, § 3(d). This aspect of the long-arm statute is discussed in section III, *infra*, and, as shown there, fails to establish a legally cognizable basis for Grabowski's asserted jurisdiction over the non-resident defendants.

QualCore Group, Inc., QCG Acquisition Corporation, TeraBurst Networks, Inc., and LEDA Systems, Inc. ("Merger Agt.") §§ 2.1, 3.1. Plaintiff thus apparently (and correctly) concedes that the actions of Delaware corporations headquartered in California engaging in a reverse triangular merger with a Delaware corporation with offices only in Texas and California could only give rise to personal jurisdiction in Massachusetts if, in the context of the merger, the non-resident corporations somehow engaged in acts in Massachusetts at the time of the merger or thereafter that gave rise to Grabowski's claims. The remaining allegations of the Complaint are thus irrelevant as to Teraburst and QualCore Group.

### 2. Grabowski cannot show that his claims arise from acts of the non-resident entities occurring during or after 2003

Plaintiff speculates he could establish long-arm jurisdiction *if* the non-resident entities (1) assumed liability through the merger for LEDA's alleged pre-merger contractual obligation to Grabowski; (2) failed, in connection with the merger, to honor Grabowski's alleged rights as a LEDA optionholder; and/or (3) relied upon a Massachusetts resident or entity to help effectuate the merger in some way. *See* Plaintiff's Opposition, § III(B). As discussed below, since none of these three speculated acts in fact took place, jurisdictional discovery to establish long-arm jurisdiction would be futile.

First, as the Merger Agreement submitted herewith unequivocally shows, neither non-resident entity succeeded to LEDA's liabilities through merger. Contrary to Grabowski's naked assertions, the non-resident entities are not playing a "shell game" to hide which company succeeded to LEDA's contractual liabilities. As set forth in the Merger Agreement, LEDA plainly retained its own *bona fide* liabilities.[3] Representatives of both non-resident entities have

---

[3] In this regard, Grabowski is apparently deliberately misreading Analog's Answer when he accuses Analog of "declin[ing] to admit" that it was in fact the successor to LEDA's liabilities. Opposition at 8. A careful reading of Analog's Answer makes clear that Analog does **_not_** deny

already stated in sworn affidavits that LEDA (n/k/a QualCore Logic (Analog), Inc.) remained a separate corporate entity after the 2003 merger and that neither TeraBurst nor QualCore Group succeeded to LEDA's liabilities as a general matter. Jain Aff. ¶ 6; Pirot Aff. ¶¶ 4-6. This sworn testimony is corroborated in Section 5.11 of the Merger Agreement,

Merger Agt. § 5.11. In no other respects did the non-resident entities succeed, on the face of the Merger Agreement, to any other liabilities of LEDA. Supplemental Declaration of Johan Pirot ("Suppl. Pirot Decl.") ¶¶ 5-6 [attached hereto at Tab 1]; Supplemental Declaration of Mahendra Jain ("Suppl. Jain Decl.") ¶¶ 8-9 [attached hereto at Tab 2].

Second, the non-resident entities did not have any role in the alleged failure to honor Grabowski's rights as a LEDA optionholder. Specifically, Grabowski accuses the non-resident entities of "failing to notify Grabowski of the merger, failing to provide him with merger consideration, failing to provide him with voting, dissenting, or appraisal rights, and/or unlawfully canceling or converting his stock options." Opposition at 13-14. However, all responsibility for the rights of LEDA optionholders leading up to the merger belonged to LEDA, not to TeraBurst or QualCore Group. Suppl. Pirot Decl. ¶ 7; Suppl. Jain Decl. ¶ 10. Thus, to whatever extent, if any, any rights of LEDA optionholders were disregarded in any of the

---

that it succeeded to LEDA's *bona fide* liabilities. To the contrary, Analog states quite clearly in its Answer that "LEDA was renamed Analog in connection with a merger." In further answering, Analog states only that it does not understand Grabowski's loaded reference to "all *relevant* liabilities of LEDA Systems," (Compl. ¶ 2; Answer ¶ 2) (emphasis added), and thus declines by its Answer to respond in a way that Grabowski could construe as admitting liability to Grabowski's alleged claims. Nowhere does LEDA deny that it succeeded to Analog's legitimate liabilities.

manners alleged by Grabowski, such alleged acts were *not* committed by TeraBurst or QualCore Group. Indeed, the non-resident entities did not even know that Grabowski had ever been (or had claimed to be) an optionholder of the company. Suppl. Pirot Decl. ¶ 8; Suppl. Jain Decl. ¶ 11. The LEDA disclosure schedule listing all LEDA optionholders did not include Ralph Grabowski. *See* Merger Agreement - LEDA Disclosure Schedule § 2.3(e) [page 15] and Attachment 2.3(e) (attached as Exhibit A to Suppl. Jain Decl.)

Third, the non-resident entities did not rely on any Massachusetts resident or entity to effectuate the merger. Suppl. Pirot Decl. ¶ 9; Suppl. Jain Decl. ¶ 12.

### III. GRABOWSKI CANNOT ESTABLISH JURISDICTION OVER THE NON-RESIDENT ENTITIES UNDER THE MASSACHUSETTS LONG-ARM STATUTE OR THE GENERAL JURISDICTION PRONG OF THE FEDERAL DUE PROCESS CLAUSE WHERE, AS HERE, THEY COMMITTED NO TORTIOUS ACTS INJURING GRABOWSKI IN MASSACHUSETTS AND THERE ARE SIMPLY INSUFFICIENT CONTACTS TO COMPLY WITH DUE PROCESS

Grabowski alternatively argues that long-arm jurisdiction may exist based on tortious injury occurring inside Massachusetts, even if the allegedly tortious acts occurred elsewhere. *See* Opposition at 16-17; *see also* Mass. Gen. L. ch. 223A, § 3(d). To establish such jurisdiction, Grabowski must show that his claim arises out of tortious acts that injured him in Massachusetts and that the non-resident entities have minimum contacts with Massachusetts sufficient under both the long-arm statute and the due process clause. *See* Mass. Gen. L. ch. 223A, § 3(d); *United States v. Swiss American Bank, Ltd.*, 191 F.3d 30 (1st Cir. 1999). He can do neither.

#### A. Grabowski Has Not Properly Pleaded The Occurrence of Any Tortious Acts That Injured Him in Massachusetts And, Even If He Had Pleaded A Tort Claim, His Chapter 93A Claim Is Time-Barred

As an initial matter, Grabowski pins this argument on alleged breaches of Chapter 93A, suggesting that his 93A claim should be treated as a claim for tortious injury occurring in Massachusetts. However, neither of the cases Grabowski cites actually supports such an

extension of the law, Opposition at 15; instead, the courts declined to decide whether claims alleged under the Massachusetts consumer protection statute could provide a jurisdictional hook under this tortious injury prong of the long-arm statute. *See Lyle Richards Int'l., Ltd. v. Ashworth, Inc.*, 132 F.3d 111 (1st Cir. 1997); *LaVallee v. Parrot-Ice Drink Prods. of Am., Inc.*, 193 F. Supp. 2d 296 (D. Mass. 2002). Nor has Grabowski identified any authority from the Massachusetts state courts for the same imaginative proposition. Thus a fair reading of Grabowski's argument is that he is simply trying to use Chapter 93A to bootstrap a tort claim onto a case that sounds entirely in contract. There is no precedent that should cause this Court to conclude that such a tortuous thread would meet the strict constitutional due process requirements necessary to establish personal jurisdiction. *See, e.g., Swiss American Bank*, 274 F.3d at 625 (affirming lower court's denial of personal jurisdiction discovery and quoting, "Indeed, so bootless…is the government's showing here in light of the applicable authority, that it has made no colorable claim sufficient to entitle it to any further discovery").

In any event, even if Grabowski's vaguely articulated Chapter 93A claim against the non-resident entities did sound in tort, he still cannot establish jurisdiction via this claim because it is time-barred and inapplicable to contract employees. *See generally* QualCore Logic (Analog), Inc.'s Motion to Dismiss Claim III and the briefs filed in support thereof.

  **B.** **Moreover, Grabowski Could Not As a Matter of Fact Show That His Claims Arise Out of Tortious Acts of the Non-Resident Entities That Injured Him in <u>Massachusetts</u>**

Even if Grabowski had properly pleaded a tort claim against the non-resident entities, which he has not, Grabowski is flatly incorrect in his statement that "[t]here is no requirement that a plaintiff's cause of action arise out of these Massachusetts contacts." Opposition at 16. To the contrary, the cause of action still must "aris[e] from the person's…causing tortious injury in this commonwealth by an act or omission outside this commonwealth…." Mass. Gen. L. ch.

223A, § 3. Grabowski has failed to meet this requirement because, as set forth above, neither TeraBurst nor QualCore Logic succeeded to LEDA's liabilities through merger, had any involvement in or responsibility for the handling of options to purchase shares of LEDA stock, or relied on any Massachusetts resident or entity to effect the merger, and thus did not engage in the "tortious" acts alleged, let alone in Massachusetts.

### C. Nor Can Grabowski Establish Sufficient Minimum Contacts With Massachusetts to Satisfy Either the Long-Arm Statute or the General Jurisdiction Prong of the Due Process Clause

Further, neither of the non-resident entities has sufficient contacts with Massachusetts to support jurisdiction under the long-arm statute or the constitutional due process clause. As set forth in the original and supplemental sworn affidavits filed in support of this Motion to Dismiss for Lack of Personal Jurisdiction, there are no factual bases for Grabowski's imagined contacts, each addressed in turn below, and thus no basis for Grabowski's continued insistence that there might, just might, be sufficient minimum contacts out there somewhere to justify this Court's exercise of jurisdiction.[4] *See, e.g.*, Mass. Gen. L. ch. 223A, § 3(d) (jurisdiction under section (d) of Massachusetts long-arm statute available only with respect to an entity that "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth . . . .").

#### 1. TeraBurst's development agreement provides no cognizable basis for the exercise of personal jurisdiction by this Court

Grabowski seeks to pin jurisdiction on a development agreement that Teraburst was engaged in in 2001 and 2002, an agreement wholly unrelated to the current dispute and that

---

[4] Even if the facts were different and minimum contacts existed, the exercise of jurisdiction over the non-resident entities still would fail to conform with constitutional notions of fair play and substantial justice under the Gestalt factors. *See* Defendants' Memorandum of Law at 12-15.

involved a total of only seven (7) trips to Massachusetts over a two-year period by three (3) TeraBurst employees, ending two years ago. In particular, as documented in supplemental affidavits filed herewith, this development agreement was entered into

Suppl. Pirot Decl. ¶¶ 10-13; Suppl. Jain Decl. ¶¶ 4-7. The agreement was

Suppl. Pirot Decl. ¶ 11; Suppl. Jain Decl. ¶ 5. Over the course of the project, only three TeraBurst employees traveled to Massachusetts,

[5] Declaration of Kathy Ishihara ("Ishihara Decl.") ¶¶ 3-8. All travel was completed by June 2001, more than three years ago and more than two years before LEDA was merged into Analog (a subsidiary of a Teraburst subsidiary). Ishihara Decl. ¶ 8. Each visit lasted no more than several days. Ishihara Decl. ¶ 8.

Suppl. Pirot Decl. ¶ 12; Suppl. Jain Decl. ¶ 6.

Suppl. Pirot Decl. ¶ 13; Suppl. Jain Decl. ¶ 7.

The United States Supreme Court itself has held that the types of contacts that Grabowski spotlights have failed to support the assertion of personal jurisdiction over other out-of-state defendants. *See Helicopteros Nacionales de Colombia, S.A. v. Hall, et al.*, 466 U.S. 408 (1984) (holding no jurisdiction existed in Texas even though defendant company had entered into

---

[5] TeraBurst conducted a thorough review of its files and has identified only one other employee trip to Massachusetts for any reason, a trip made by Jules Levine in 2000 to attend a symposium. Ishihara Decl. ¶ 7.

contract negotiations in Texas and had sent employees to Texas for training, and even though claim arose out of those contacts). Grabowski's reliance on *Heins v. Wilhelm Loh Wetzlar Optical Machinery, GmbH & Co.*, 26 Mass. App. Ct. 14, 522 N.E.2d 989, 993 (1988), which he cites for the proposition that eight business trips to Massachusetts by three of defendant's employees is sufficient to establish personal jurisdiction, is misplaced. Grabowski disregards critical differences between that case and this one on both grounds on which the court found jurisdiction. First, the defendant in *Heins* sold its products directly to customers in Massachusetts, including plaintiff's employer. Thus the court found that jurisdiction was appropriate because the defendant derived substantial revenue from its contacts with Massachusetts. In contrast, TeraBurst and QualCore Group have not sold any products to Massachusetts customers. Suppl. Pirot Decl. ¶ 14; Suppl. Jain Decl. ¶ 14. Second, plaintiff's injury in *Heins* allegedly was caused by one of the products that the defendant sold in Massachusetts, so there was a direct relationship between the cause of action and the assertion of jurisdiction. In contrast, Grabowski's alleged injuries are entirely unrelated to the business trips that TeraBurst employees made to Massachusetts.

Apart from this employee travel, the development agreement's only connection with Massachusetts is the fact of the existence of the contract itself. However, "[a] contract, by itself, cannot automatically establish minimum contacts." *United States v. Swiss American Bank, Ltd..*, 274 F.3d 610, 621 (1st Cir. 2001) (finding no jurisdiction despite entity's having entered into contract with resident of forum). In *Burger King v. Rudzewicz*, 471 U.S. 462 (1985), the Supreme Court found *specific* personal jurisdiction over an out-of-state defendant based on the alleged breach of a *twenty-year* contract that implicated a substantial and continuing relationship with the forum. Unlike in *Burger King*, here                                                                 was

short-term and involved no substantial, ongoing contacts with Massachusetts, and thus cannot by itself support general jurisdiction. Likewise, the development agreement does not satisfy the long-arm statute's requirement of "regularly" doing or soliciting business, engaging in some other "persistent" course of conduct, or deriving substantial revenue from goods used or services rendered in Massachusetts. Mass. Gen. L. ch. 223A, § 3(d).

### 2. TeraBurst's supplier relationships do not create jurisdiction

Grabowski also argues that jurisdiction lies because TeraBurst has purchased goods from a handful of Massachusetts suppliers. However, merely placing orders with Massachusetts companies and remitting payment to Massachusetts does not establish even specific jurisdiction, let alone general jurisdiction. *See, e.g., 'Automatic' Sprinkler Corp. of Amer. v. Seneca Foods Corp.*, 280 N.E.2d 423 (Mass. 1972) (denying specific personal jurisdiction asserted on the basis of the purchase of goods from and payment sent to companies in Massachusetts).

TeraBurst and QualCore Group conducted a thorough inspection of their records to identify all purchases linked to Massachusetts. Ishihara Decl. ¶ 9. Among the over two hundred companies from which TeraBurst has purchased goods and services since 2000, only twenty issued invoices with a Massachusetts address. Ishihara Decl. ¶ 10. The goods and services covered by these invoices from Massachusetts constitute only a small fraction of all the goods and services that TeraBurst has purchased. Ishihara ¶ 11. QualCore Group has purchased *no* goods or services from Massachusetts. Suppl. Jain Decl. ¶ 15.

### 3. No other contacts exist that could support jurisdiction over the non-resident entities in Massachusetts

Grabowski, perhaps aware that he cannot establish jurisdiction based on the slender (for TeraBurst) and non-existent (for QualCore Group) contacts with Massachusetts, asks this Court

to condone a fishing expedition to chase even less promising -- and ultimately fruitless -- avenues for evidence of sufficient contacts with Massachusetts.

Grabowski asks for details about historical sales of goods or services to customers in Massachusetts. Neither TeraBurst nor QualCore Group has ever sold goods or services to customers in Massachusetts. Suppl. Pirot Decl. ¶ 14; Suppl. Jain Decl. ¶ 14.

Grabowski asks for details about sales or marketing representatives' activities directed to Massachusetts. Neither TeraBurst nor QualCore Group has ever directed sales or marketing activities to Massachusetts. Suppl. Pirot Decl. ¶ 15; Suppl. Jain Decl. ¶ 16.

Grabowski speculates that the companies have employees in Massachusetts. Neither TeraBurst nor QualCore Group has any employees in Massachusetts.[6] Suppl. Pirot Decl. ¶ 16; Suppl. Jain Decl. ¶ 17.

Grabowski speculates that the companies have shareholders in Massachusetts. Neither TeraBurst nor QualCore Group has any shareholders in Massachusetts. Suppl. Pirot Decl. ¶ 17; Suppl. Jain Decl. ¶ 18. Grabowski tries to argue that he is a shareholder in TeraBurst but that is not the case; to the contrary, as his Complaint confirms, TeraBurst has never issued any shares of stock to Grabowski. (Compl. ¶¶ 37, 38, 42).

Grabowski speculates that the companies have business partners in Massachusetts. Neither TeraBurst nor QualCore Group has any past or present business partners in Massachusetts. Suppl. Pirot Decl. ¶ 18; Suppl. Jain Decl. ¶ 19. As previously disclosed and as

---

[6] Grabowski's reference to the website of defendant Analog (LEDA's successor), which lists -- on one press release -- a Massachusetts phone number for the consultant who wrote the press release, is misguided. Opposition at 12. Analog does not dispute this Court's jurisdiction. In any event, Analog is legally separate from both QualCore Group and TeraBurst, so even if Analog did have a Massachusetts employee (which it does not), it would be irrelevant to determining whether this Court may exercise personal jurisdiction over TeraBurst or QualCore Group. Neither non-resident entity has any ownership of the website www.qualcorelogic.com. Suppl. Pirot Decl. ¶ 21; Suppl. Jain Decl. ¶ 23.



discussed above, TeraBurst previously entered into a development agreement with a company in Massachusetts, In any event, the development agreement explicitly was not a business partnership. Suppl. Pirot Decl. ¶ 18; Suppl. Jain Decl. ¶ 21.

Grabowski speculates that the companies have Massachusetts-based investors, independent contractors, partnerships, consultants, joint ventures, or other business or strategic relationships. Except as already disclosed, neither TeraBurst nor QualCore Group has any such contacts. Suppl. Pirot Decl. ¶ 19; Suppl. Jain Decl. ¶ 20.

Grabowski speculates that the companies may have loan applications within the Commonwealth of Massachusetts. Neither TeraBurst nor QualCore Group has any loan applications within the Commonwealth of Massachusetts. Suppl. Pirot Decl. ¶ 20; Suppl. Jain Decl. ¶ 22.

In sum, what few connections have ever existed between the non-resident entities and the Commonwealth of Massachusetts were ephemeral at best and ended years ago. No exercise of jurisdiction is appropriate on these facts.

## CONCLUSION

For the foregoing reasons, and for the reasons previously set forth in TeraBurst's and QualCore Group's Amended Memorandum, TeraBurst and QualCore Group respectfully request that this Court deny Grabowski's request for jurisdictional discovery and dismiss Grabowski's claims against them for lack of personal jurisdiction.

Respectfully submitted,

TERABURST NETWORKS, INC. AND
QUALCORE GROUP, INC.,

By Their Attorneys,

/s/ Michele A. Whitham
Michele A. Whitham, BBO # 553705
John M. Granberry, BBO # 647086
Foley Hoag LLP
155 Seaport Boulevard
World Trade Center West
Boston, MA 02210-2600
(617) 832-1000

Dated: September 24, 2004