**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| RALPH E. GRABOWSKI, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 04-CV-10905 (MEL) |
| QUALCORE LOGIC (ANALOG), INC., | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF RALPH E. GRABOWSKI'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND TO THE DISPUTE AND MOTION ............................................................ 3

III. ARGUMENT ................................................................................................................... 5

    A.    Mr. Grabowski's Agreements With Third Party Clients Are Completely Unrelated To This Lawsuit and Will Not Shed Light On His Contract With LEDA Systems ........................................................................................................ 5

    B.    Extrinsic Evidence Is Potentially Admissible Only To Interpret Ambiguous Contract Terms and Discovery Requests For Such Evidence Must Be Tailored To Address Only Documents Relevant The Interpretation Of Those Ambiguous Terms ............................................................. 7

    C.    Analog's Argument Regarding The Draftsmanship Of The Agreement Is Pretextual Since Analog's Requests Seek Information That Has Already Been Provided Through Discovery ............................................................................ 9

    D.    Analog Impermissibly Seeks Extrinsic Evidence Of Unrelated Contracts In Order To Prove Frivolous Defenses That Analog's Attorneys Lack Any Good Faith Evidentiary Basis To Assert ............................................................. 10

IV. CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Texas Eastern Transmission Corp.*, No. MDL 764 (E.D. Pa. July 26, 1989) ........................ 7

*Lohnes v. Level 3 Communications, Inc.,* 272 F.3d 49 (1st Cir. 2001) ........................................... 8

*Nadherny v. Roseland Property Company, Inc.,* 390 F.3d 44 (1st Cir. 2004) ................................ 8

*Nicolaci v. Anapol,* 387 F.3d 21 (1st Cir. 2004) ........................................................................ 8

*North River Ins. Co. v. Greater New York Mut. Ins. Co.*, 872 F. Supp. 1411 (E.D. Pa. 1995) ...... 7

# I.
# **INTRODUCTION**

Continuing its attempt to escalate this standard breach of contract dispute into a much more complicated, time consuming and costly matter, defendant QualCore Logic (Analog), Inc. ("Analog") now asks this court to compel plaintiff Ralph Grabowski – whose professional relationship with and work for Analog / LEDA Systems[1] spanned less than six months – to produce documentation of his *entire* twenty year career as a marketing consultant. Analog's essentially unlimited requests seek information regarding Mr. Grabowski's work and compensation agreements with *non-party* clients that have no relation whatsoever to this dispute, and represent more of an effort to harass Mr. Grabowski than attempt to discover relevant, admissible evidence. For example, Request No. 9 of Analog's Document Request would require Mr. Grabowski to provide without limitation:

> Copies of consulting agreements he has drafted for other prospective or actual clients that incorporate *any or all terms similar or identical to the terms of the Consulting Agreement.* (emphasis added)

Similarly, Analog's Requests Nos. 10 and 56 would require:

> Copies of documents concerning the compensation arrangements (whether as cash, option, stock, royalties, or any other form) set forth in *all* other consulting arrangements drafted by Mr. Grabowski *for any prospective or actual client* of Mr. Grabowski's that incorporate *any or all terms* similar or identical to the terms in the Consulting Agreement. (Request 10) (emphasis added); and

> All documents and tangible things concerning the methods, structures, or forms of compensation (whether as cash, options, stock, royalties, or otherwise) charged by him to *any* client for his services as a Marketing Consultant or VP of Marketing. (Request No. 56) (emphasis added).

---

[1] The contract at issue was actually between Mr. Grabowski and LEDA Systems, which was acquired through merger by QualCore Analog in or around September 2003. Analog is a successor-in-interest to all relevant liabilities of LEDA Systems, including amounts owed to third parties such as Mr. Grabowski. This memorandum will refer where appropriate to LEDA Systems as the contracting party for which Mr. Grabowski provided his services.

1

While this tactic advances Analog's effort to ignore and dilute the direct evidence that has already been produced by both sides, it also represents a futile attempt to burden and harass Mr. Grabowski by requiring him to produce an inordinate amount of documents unrelated to this lawsuit. Other courts have ruled that a party's actions and relationships with unrelated parties shed no discoverable light upon claims between independent parties to a separate contract. This case should be no different.

Initially, Mr. Grabowski notes that in response to Analog's seventy-four individual requests, he has produced over four thousand pages of documents directly related to the Consulting Agreement at issue and his relationship with LEDA Systems. These documents directly address the parties' dispute concerning the compensation owed to Mr. Grabowski for the work he performed for LEDA Systems, the negotiation of Consulting Agreement, and the dealings between Mr. Grabowski and LEDA Systems both before and after their contractual relationship ended. These documents, and not documents related to other clients, contain all the necessary information to resolve the key issues in this case.

Analog, however, seeks to discover and use extrinsic evidence to "clarify" unambiguous contractual terms and to prove the frivolous allegations that it has raised as a defense. Clearly daunted by the prospect of having no evidence to support its baseless claims and defenses, Analog is now on a fishing expedition, using vexatious, burdensome tactics to force Mr. Grabowski to produce over two decades worth of business documents that have nothing to do with this litigation. Analog's motion to compel the production of this irrelevant information should be denied.

## II.
## BACKGROUND TO THE DISPUTE AND MOTION

As an initial matter, counsel for Mr. Grabowski takes issue with Analog's representation of the parties' efforts to resolve this discovery dispute. In particular, Analog states in its Motion to Compel that a good faith effort was made to resolve the narrow issues presented by its Motion, and provides a cursory procedural background as a means of proving this assertion. *See* Qualcore Logic (Analog) Inc.'s Motion To Compel Production Of Documents, Local Rule 7.1(A)(2) and 37.1(B) Certification, at 2; Memorandum In Support Of Qualcore Logic (Analog) Inc.'s Motion To Compel Production Of Documents, at 3-4. While Analog's chronicle of the communications between respective counsel prior to the filing of its Motion is accurate, Analog notably fails to explain its refusal to engage in a meaningful, detailed discussion with Mr. Grabowski's counsel regarding the possibility of resolving the differences between the parties over what Mr. Grabowski should reasonably be required to produce.

Specifically, in a letter written to Mr. Grabowski's counsel on July 21, 2005, Attorney Kurtz set forth his client's position with regard to the disputed document requests and asked that a telephonic discovery conference be held to further discussions on that subject. Attorney Kurtz wrote: "In accordance with Local Rule 37.1, we request that a telephonic discovery conference be held to discuss the issues raised in this letter as promptly as possible and no later than fourteen (14) calendar days of this request." *See* July 21, 2005 Letter from David C. Kurtz, Esq. to Marc N. Henschke, Esq., Ex. A. Four days later, Attorney Marc Henschke replied to Attorney Kurtz by letter. In an effort to have both parties' respective positions well defined prior to any further discussions, Attorney Henschke explained in detail the reasons for his client's objection to Analog's requests, primarily taking issue with Analog's demand that it have access to all of Mr. Grabowski's professional records rather than those that were similar to the disputed contract

3

according to when they were entered into and/or the work performed. *See* July 25, 2005 Letter from Marc. N. Henschke, Esq. to David C. Kurtz, Esq., Ex. B. Attorney Henschke's prompt response concluded by accepting Analog's offer to engage in a telephonic conference to resolve the issues by narrowing the scope of Analog's discovery requests. *See id.* at p.3. Instead of following through with his request to engage in a telephonic discovery conference (which was accepted), Attorney Kurtz made no response, waited the required fourteen days, and filed Analog's Motion To Compel.

    These letters exchanged between counsel in late July constituted the *only* communications addressing the disputed discovery requests in detail, and Analog's attempt to characterize two previous telephone conversations (April 15, 2005 and May 20, 2005) as discovery conferences sufficient to satisfy the requirements of the Local Rules is wholly inaccurate. Taken with Analog's failure to pursue a conference after the exchange of letters, Analog's actions clearly show that its counsel never entertained the possibility of making a good faith effort to reach a compromise by attempting to limit Analog's overly broad requests, as suggested by Attorney Henschke. Rather, it appears from the history of this discovery dispute that counsel for Analog engaged in the telephone calls and exchange of letters only in order to be able to state, however disingenuously, that Analog had satisfied the requirements of the Local Rules. Notwithstanding this objection to Analog's mischaracterization of its good faith effort to resolve this dispute, Mr. Grabowski remains committed to reaching a compromise designed to reduce the burden and over breadth of Analog's request.

**III.**
**ARGUMENT**

In its Motion to Compel, Analog argues that *every* consulting agreement entered into or contemplated by Mr. Grabowski and a third party has relevance to this dispute and is likely to lead to the discovery of admissible evidence. *See* Memorandum In Support Of Qualcore Logic (Analog) Inc.'s Motion To Compel Production Of Documents ("Memorandum"), at 5. Additionally, Analog contends that it must have *all* related documents showing Mr. Grabowski's compensation arrangements with third parties, arguing that these documents may be admissible to prove some of its defenses. *Id.* Analog's requests make no limitations as to the date when these other agreements were made, where the work was performed, or the type of client for whom Mr. Grabowski may or may not have provided services. In fact, as is clear from the requests themselves and Analog's argument that all of these documents must be produced, no effort whatsoever was made by Analog to tailor the requests to target agreements with similar clients, for similar durations, or with similarly relevant compensation structures.

As justification for this extremely broad request, Analog argues that these documents are relevant as a matter of law to interpreting what it has decided are the ambiguous terms of the entire Consulting Agreement at issue, and in order to find support for various unfounded defenses it has raised against Mr. Grabowski. *Id.* at 6. These arguments lack merit for a number of reasons.

A.   **Mr. Grabowski's Agreements With Third Party Clients Are Completely Unrelated To This Lawsuit and Will Not Shed Light On His Contract With LEDA Systems**

Analog justifies its overly broad requests for extensive information concerning third party relationships on the ground that they "may inform the interpretation of the terms of this Consulting Agreement." Memorandum, at 6. Whether Mr. Grabowski's contract with Analog is ambiguous or otherwise represents a failed "meeting of the minds," however, is not related to his

5

contracts with third party clients ten years earlier or five years into the future, but rather is dependant upon the contract language in the Consulting Agreement itself. Mr. Grabowski's relationship with all other clients will not shed light on how the language of this Consulting Agreement should be interpreted, and would do little more than confuse the issues by attempting to make apples to oranges comparisons by extrapolating from one agreement the meaning of another. For this reason, the discovery requested by Analog is neither "relevant to the subject matter involved in the pending action," nor "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26. Accordingly, Analog's Motion to Compel should be denied.

Undoubtedly, over the last twenty years Mr. Grabowski's work for other clients has arisen out of and been performed in a variety of different contexts and circumstances, involving the unique needs and abilities of both parties. Accordingly, each relationship between Mr. Grabowski and his clients necessarily would have required distinct language and provisions particular to each contract for his services. Nevertheless, rather than focusing its discovery on the contract at issue in this litigation, Analog's "other client" requests have the intended purpose of expanding discovery to focus on Mr. Grabowski's work for and compensation from other parties, as though these unique relationships and agreements will somehow allow Analog to decipher the already clear terms of the Consulting Agreement by introducing unrelated documents to create ambiguity and uncertainty. According to Analog, somewhere within this universe of unrelated agreements with third parties, there may reside a document that can "shed light" on Mr. Grabowski's contract with LEDA Systems.Analog's "shedding light" argument, however, is without merit, for Analog's requests for extraneous, unrelated information defeat the

6

purposes of the rules of discovery, and would only serve to muddle the issues and impose further burdens upon Mr. Grabowski and the court.

Notably, Analog's requests are in many ways no different from similar requests that often arise in the insurance industry when policyholders seek information concerning other policyholders or litigation. In such instances, courts have noted the problems with this argument and have refused to allow the discovery of other policies with third parties unrelated to the policies at issue. *See, e.g., Fidelity and Deposit Co. of Maryland v. McCulloch,* 168 F.R.D. 516, 526 (E.D. Pa. 1996) ("Allowing discovery of other actions which concerned completely different facts and circumstances would 'run counter to the important but neglected Rule 1 of the Federal Rules of Civil Procedure which requires that all rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action"'") (quoting *North River Ins. Co. v. Greater New York Mut. Ins. Co.,* 872 F. Supp. 1411, 1412 (E.D. Pa. 1995)) As illustrated by these cases, not all contracts are necessarily relevant or informative, and limits must be drawn around what is reasonable based upon the intended use of the sought after information. Given that Analog is seeking this information largely in connection with contractual interpretation issues, the unreasonableness of its requests is obvious, and the likelihood discovering relevant information remote at best.

**B.** **Extrinsic Evidence Is Potentially Admissible Only To Interpret Ambiguous Contract Terms and Discovery Requests For Such Evidence Must Be Tailored To Address Only Documents Relevant The Interpretation Of Those Ambiguous Terms**

While it is true that courts may turn to extrinsic evidence when interpreting a contract, a resort to such extrinsic evidence can only be appropriate with respect to ambiguous contract provisions. *See, e.g., Nadherny v. Roseland Property Company, Inc.,* 390 F.3d 44, 47 (1st Cir. 2004) (noting that if a contract is unambiguous there is no need to consult extrinsic evidence); *Nicolaci v. Anapol,* 387 F.3d 21, 27 (1st Cir. 2004) ("The Agreement's unambiguous language

7

leaves no question of fact to be resolved, and the contract must be enforced according to its terms."); *Lohnes v. Level 3 Communications, Inc.,* 272 F.3d 49, 53 (1st Cir. 2001) ("For the most part, a court considering an unambiguous agreement need not consult extrinsic evidence to impart meaning to its terms."). Aware of this requirement, Analog ignores the clear terms of the Consulting Agreement, unilaterally characterizes the contract ambiguous in its entirety and then, by some leap of logic, asserts that documentation of Mr. Grabowski's entire career is necessary to figure out what the contract means.

Analog's attempt to characterize the entire Consulting Agreement as ambiguous has no basis, but rather stems largely from the fact that Analog is unhappy with the terms of a contract that it inherited from LEDA Systems and now seeks avoid. Stating simply that that the Consulting Agreement is a "loose collection of four pages" that "lacks any integration clause, definitions or other corporate formalities," Analog then deems the entire agreement "facially ambiguous" based solely on these alleged deficiencies, while citing no authority for the proposition that contracts lacking the alleged requirements are *per se* ambiguous. *See* Motion to Compel, at 2-3. What close examination of the Consulting Agreement reveals, however, is that the agreement is in fact a tight assembly of a three page contract dated February 12th and 14th, 1997 (integrated by the multiple signatures on each page and by the Notarization) and a one page addendum of April 8, 1997.[2] With the exception of the royalty payment provision, which Mr. Grabowski has already conceded may arguably be ambiguous, the rest of the contract and addendum are straightforward and do not require interpretation.

---

[2] By way of example, it would be difficult to find any ambiguity in LEDA System's original contract with Mr. Grabowski, which clearly provides for an initial "forty man-day assignment," with the parties agreeing that Mr. Grabowski would charge a reduced fee of $1,500 per day plus expenses on the express condition that LEDA Systems pay him a specified combination of: (i) advance cash payments; (ii) deferred cash payments; and (iii) stock options. With respect to the second twenty man-day period of the assignment, the Consulting Agreement gave LEDA Systems the choice of either continuing to compensate Grabowski on exactly the same terms set forth above, or of modifying their Agreement by converting it to a completely *non-deferred* cash payment structure.

8

Nevertheless, instead of making the effort to identify specific contract terms that may be ambiguous and targeting agreements that feature a similar provisions (such as those containing royalty payment provisions), Analog has made a grossly overbroad request seeking *all* third party agreements containing "any or all terms similar or identical to the terms in the Consulting Agreement," including those terms that cannot in any respect be considered ambiguous and which are not in dispute. Not only is this reasoning flawed and contrary to the rules of contractual interpretation and evidence, it is also an abuse of discovery that should not be permitted.

C. **Analog's Argument Regarding The Draftsmanship Of The Agreement Is Pretextual Since Analog's Requests Seek Information That Has Already Been Provided Through Discovery**

In further support of its argument that Mr. Grabowski is obligated to produce in this case every actual or prospective consulting agreement that he has ever had with any client throughout his entire career, Analog claims that these documents are "undoubtedly relevant" because, if they contain terms that are similar or identical to the Consulting Agreement at issue in this case, they would tend to prove that Mr. Grabowski must have been the draftsman of the Consulting Agreement. Presumably, Analog hopes to use this alleged fact to argue that the agreement should be construed against Mr. Grabowski.[3] Despite this claimed need for what Analog characterizes as the best evidence to prove authorship of the Agreement, however, the record in this case already contains all the direct evidence needed to establish who drafted the Agreement.

---

[3] Analog's assumption that Mr. Grabowski was the initial drafter of the contract and thus must have its terms construed against him seems to ignore the fact that the terms of the agreement are hardly skewed solely in favor of Mr. Grabowski. In fact, in all likelihood most of the provisions in the Consulting Agreement would never be suggested at the first instance by a consultant entering into a similar relationship. Indeed, to imply that Mr. Grabowski desired to receive less than half of his typical fee up front while putting off the rest of his compensation to a later date when the company earned revenue defies logic, for clearly if he had been in a superior position and was the sole drafter of the agreement he would not have suggested that LEDA Systems decide when he should be compensated and, more importantly, would not have proposed a reduction in his daily rate in the first instance.

To date, both parties have produced dozens of pages of emails and other documents chronicling the negotiations that preceded both the original Consulting Agreement and, to some extent, the addendum, from which the authorship of most of the provisions of the contract are easily ascertainable. Moreover, Analog's mischaracterization of Mr. Grabowski as the primary draftsman of the Consulting Agreement is clearly contradicted by these previously produced documents, from which it is evident that LEDA System's president, Greg Peterson, played an active role in the drafting process, suggesting and editing nearly every provision that ended up in the signed version of the contract. Analog chooses to ignore this evidence, however, hoping that extrinsic evidence of Mr. Grabowski's contracts with third parties may provide further insight into the part he played in drafting the Consulting Agreement that is at the heart of this litigation, and that somehow these other agreements may help to diminish Mr. Peterson's role in writing and accepting the agreement.

Nevertheless, because the direct evidence already produced clearly shows that Mr. Grabowski "drafted" his standard fee schedule, while Greg Peterson created the rest of the agreement, there is no need to resort to any other contracts; the negotiations speak for themselves.

D.     **Analog Impermissibly Seeks Extrinsic Evidence Of Unrelated Contracts In Order To Prove Frivolous Defenses That Analog's Attorneys Lack Any Good Faith Evidentiary Basis To Assert**

Analog argues that the documents it seeks relating to the services performed by Mr. Grabowski for other clients are necessary to support its contention that Mr. Grabowski's claims should be dismissed because he failed to perform under the contract. According to Analog, evidence of Mr. Grabowski's other activities again will "shed light" on whether or not he properly dedicated himself to fulfilling the terms of the Consulting Agreement with LEDA Systems. As an initial matter, it is important to note that Mr. Grabowski's contract with LEDA

10

contained no restrictions on his ability to provide consulting services to other parties during the time that he was engaged by LEDA Systems, nor was it reasonable for LEDA to assume that their relationship would be exclusive, particularly based on the fact that Mr. Grabowski was not being paid his customary full daily rate by LEDA Systems. Accordingly, whether Mr. Grabowski was engaged in work for other clients at any time during his contractual relationship with LEDA Systems has no relevance to this dispute.

Even disregarding the absence of an exclusivity provision in the Consulting Agreement, however, Analog's attempt to manufacture an argument that Mr. Grabowski performed in an unworkmanlike manner, or did not give LEDA Systems the attention that he had promised, is entirely frivolous, and is again the result of Analog's dissatisfaction with an inherited contract that it does not wish honor. Knowing that Mr. Grabowski performed a significant amount of work for LEDA Systems for which he was never paid, and that LEDA Systems had on several occasions acknowledged this work and the compensation due to Mr. Grabowski for his services (including the stock options and royalties), Analog has decided to avoid its obligations by turning the tables on Mr. Grabowski and "defending" itself by asserting out of the blue that he did not perform and had divided loyalties.

These contentions were first raised in Analog's Answer to Mr. Grabowski's Complaint, and were made without any evidentiary support whatsoever. Indeed, not a single document or witness has been put forward by Analog to support these claims:

- there is no evidence to suggest that Mr. Grabowski was working greater hours for other clients while under contract with LEDA Systems;
- there is no evidence suggesting that Mr. Grabowski did not perform as required under the Consulting Agreement or provide LEDA Systems with value for his

11

    work (in fact, LEDA Systems' retention of Mr. Grabowski for a second forty day period clearly suggests otherwise);

- there is no evidence that Mr. Grabowski misrepresented himself or marketed his services in a deceptive or fraudulent manner.[4]

On the contrary, evidence already produced clearly shows that Mr. Grabowski performed all work required by him, and was never accused by Analog of shirking his duties, having divided loyalties, being unqualified, or underperforming in any way.

  Quite simply, then, Analog's so-called defenses to Mr. Grabowski's claims are nothing more than statements made by its attorneys in order to bury the dispositive evidence and cloud the facts. Accordingly, Analog's argument that third party agreements are necessary to prove these allegations against Mr. Grabowski, rings as hollow as the lawyer generated allegations themselves. Analog should not be permitted through discovery to engage in a fishing expedition for purposes of avoiding its contract by attacking Mr. Grabowski. Analog's "defenses" are entirely frivolous, have no evidentiary support, and in no way justify its overly broad and burdensome requests.

---

[4] In fact, at the time that LEDA Systems engaged Mr. Grabowski and to this day, he does not maintain a resume with which he solicits business. Additionally, his website at the time consisted only of one previously published paper and nothing else, and he did not advertise. It was LEDA Systems that recruited Mr. Grabowski after Greg Peterson attended a course that Mr. Grabowski taught at MIT, thereby rendering Analog's allegations that Mr. Grabowski misrepresented himself or his qualifications wholly conclusory and without evidentiary support.

## IV.
## **CONCLUSION**

For the reasons stated above, Plaintiff Ralph E. Grabowski requests that this Court deny Analog's Motion To Compel Production of Documents.

Dated: August 22, 2005                          RALPH E. GRABOWSKI

                                                By his attorney,


                                                 /s/ Marc N. Henschke
                                                Marc N. Henschke (BBO No. 636146)
                                                ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
                                                800 Boylston Street
                                                25th Floor
                                                Boston, MA 02199
                                                Tel. (617) 267-2300

35025576

**CERTIFICATE OF SERVICE**

      I, Marc N. Henschke, hereby certify that on August 22, 2005, I caused the attached *Plaintiff Ralph E. Grabowski's Memorandum In Opposition To Defendant's Motion To Compel Production Of Documents* to be served electronically and by first class mail upon Defendant's counsel of record at the following address:

    Michele A. Whitham, Esq.
    Foley Hoag LLP
    Seaport World Trade Center West
    155 Seaport Boulevard
    Boston, Massachusetts 02210-2600


Dated: August 22, 2005

                                            /s/ Marc N. Henschke
                                            Marc N. Henschke